1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11    TAMETRIA NASH-PERRY,                ) Case No.: 1:18-cv-1512 JLT BAK (SAB)
                                          )
12                 Plaintiff,             ) ORDER ON MOTIONS IN LIMINE AND
                                          ) MOTION TO BIFURCATE THE TRIAL
13         v.                             )
                                          ) (Docs. 102, 103, and 104)
14    CITY OF BAKERSFIELD, OFFICER        )
      ALEJANDRO PATINO, and nominal       )
15    defendant JASON OKAMOTO,            )
                                          )
16                 Defendants.            )
                                          )
17   ─────────────────────────────────   )
                                          )
18    JASON OKAMOTO, individually and as  )
      successor-in-interest to CHRISTOPHER )
19    OKAMOTO, and Z.S., by and through her )
      guardian ad litem, Brittney Saucedo, )
20                                        )
                   Plaintiffs,            )
21                                        )
           v.                             )
22                                        )
      CITY OF BAKERSFIELD and OFFICER     )
23    ALEJANDRO PATINO,                   )
                                          )
24                 Defendants.            )
                                          )
25   ─────────────────────────────────   )

26         Tametria Nash-Perry, Jason Okamoto, and minor Z.S. seek to hold Bakersfield Police Officer

27   Alejandro Patino and the City of Bakersfield liable for the fatal shooting of Christopher Okamoto

28   under federal and state law.  (*See generally* Doc. 38.)  Defendants contend all actions taken were

                                          1

1    lawful and reasonable.  On July 1, 2022, both parties filed motions in limine, which are now before the

2    Court.  (Docs. 102, 103, and 104.)

3    **I.      Legal Standards Governing Motions in Limine**

4            "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

5    practice has developed pursuant to the district court's inherent authority to manage the course of trials."

6    *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in limine

7    "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially

8    prejudicial evidence in front of a jury."  *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003)

9    (citations omitted).

10           Courts disfavor motions in limine seeking to exclude broad categories of evidence.  *See*

11   *Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  The Court "is almost

12   always better situated during the actual trial to assess the value and utility of evidence."  *Wilkins v.*

13   *Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  The Sixth Circuit explained, "[A] better

14   practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to

15   ruling on a motion in limine.  *Sperberg,* 519 F.2d at 712.  Nevertheless, motions in limine are "an

16   important tool available to the trial judge to ensure the expeditious and evenhanded management of the

17   trial proceedings."  *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

18           "[A] motion in limine should not be used to resolve factual disputes or weigh evidence,"  *C & E*

19   *Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of

20   the jury.  *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000).  The Court will bar

21   use of the evidence in question only if the moving party establishes that the evidence clearly is not

22   admissible for any valid purpose.  *Jonasson*, 115 F. 3d at 440.

23           Moreover, the rulings on the motions in limine made below do not preclude either party from

24   raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates

25   a change of circumstances that would make the evidence admissible.  In this event, the proponent of

26   the evidence **SHALL** raise the issue outside the presence of the jury.  Finally, the rulings made here

27   are binding on all parties and not merely to the moving party.

28   *///*

## II.        Motion to Bifurcate the Trial (Doc. 103)

Defendants seek bifurcation of the trial into two stages: (1) liability and compensatory damages, and (2) punitive damages. (Doc. 103.) Plaintiffs have not opposed the motion.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *See also Arthur Young & Co. v. U.S. District Court*, 549 F.2d 686, 697 (9th Cir. 1977). The decision to bifurcate is within the sound discretion of the trial court.  *Davis & Cox v. Summa Corp*., 751 F.2d 1507, 1517 (9th Cir. 1985).  "A decision ordering bifurcation is dependent on the facts and circumstances of each case." *Stevenson v. Holland*, 504 F. Supp. 3d 1107 (E.D. Cal. 2020) (citation omitted).

Courts consider several factors to determine whether bifurcation is appropriate under Rule 42, including "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result" from bifurcation.  *Green v. Baca*, 226 F.R.D. 624, 630 (C.D. Cal. 2005); *see also Estate of Diaz v. City of Anaheim, 840 F.3d 592, 601* (9th Cir. Aug. 24, 2016) (indicating a trial may be bifurcated "to avoid the risk of prejudice"); *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (explaining bifurcation under Rule 42(b) may "defer[] costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues"); *see also Rios v. Tilton*, 2016 WL 29567 at *16 (E.D. Cal. Jan. 4, 2016).  Notably, "[c]ourts routinely bifurcate liability and punitive damages claims in actions with claims arising under 42 U.S.C. § 1983."  *Motley v. City of Fresno*, 2020 WL 3642502 at *2, n.1 (E.D. Cal. July 5, 2020).

The Court finds Plaintiffs would not be prejudiced by bifurcation, because in the first stage, the jury will determine whether they are entitled to punitive damages. In the second stage, which would follow immediately, the jury would determine the amount punitive damages.  Bifurcation would avoid potential confusion of issues for jurors, as the scope of evidence in the first phase would be limited to liability, whether the conduct gives rise to punitive damages and compensatory damages.  Bifurcation would expedite and economize trial by precluding the presentation of the financial status of the defendants unless and until it is necessary. *See Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1101-02 (C.D. Cal. 2002) (finding bifurcation of the punitive damages in an action arising under 42 U.S.C. §

3

1983 would "promote convenience and efficiency"). Accordingly, Defendants' motion to bifurcate the trial into two stages is **GRANTED in PART**. Evidence and arguments relating to the amount of punitive damages will be excluded from the first stage of trial, though whether the plaintiffs are entitled to an award of punitive damages will be determined in the first phase.

### III.    Plaintiffs' Motion in Limine No. 1 (Doc. 104)

Plaintiffs seek to exclude evidence of after-acquired information concerning Christopher Okamoto. (Doc. 104.) Specifically, Plaintiffs request exclusion of:

> any and all evidence concerning information about decedent Christopher Okamoto which was not known to Defendant Officer Alejandro Patino at the time of the subject shooting incident, including evidence regarding the presence of drugs in Decedent's system at the time of the shooting, and evidence regarding a text message exchange between Decedent and his grandmother on the evening of the shooting.

(*Id.* at 2.) According to Plaintiffs, the evidence should be excluded under Rules 401, 402, 403, and 404 of the Federal Rules of Evidence and because "the probative value… is substantially outweighed by the dangers of unfair prejudice, confusing the issues, undue delay, and wasting time." (*Id.*)

### A.    Reasonableness inquiry

Plaintiffs note that "[t]he main issues in this case concern the reasonableness of Officer[] Patino's use of deadly force against Christopher Okamoto." (Doc. 104 at 4.) The conduct of Officer Patino is evaluated from the perspective of a reasonable officer on the scene regardless of the actual motivation of the particular officers. *Graham v. Connor,* 490 U.S. 386, 397 (1989). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 806 (1996). Instead, liability may not attach unless his actions were objectively unreasonable, regardless of the officer's motivation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) ("the Fourth Amendment regulates conduct rather than thoughts").

When evaluating reasonableness, the fact finder "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 756 U.S. 389, 397 (2015). Thus, in general, the fact finder "cannot consider evidence of which the officer[] [was] unaware." *See Glenn v. Washington County*, 673 F.3d 864, 872-74, 873 n. 8 (9th Cir. 2011). On the other hand, what is known to the officer at the time bears on the facts and circumstances of the event. *Ruvalcaba v. City*

4

*of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).  Thus, any evidence known to Officer Patino is admissible, but information not known to him may not be admitted.

**B.     Toxicology evidence of the presence of drugs and/or alcohol (Doc. 104 at 5)**

Plaintiffs report that "[t]he toxicology report prepared by the Coroner's Office in connection with the autopsy of Decedent indicates that he may have had multiple drugs and alcohol in his system at the time of the shooting." (Doc. 104 at 5.)  Specifically, Defendants note the toxicology report indicated that "Plaintiff was intoxicated/under the influence of both alcohol and Xanax at the time of the incident." (Doc. 107 at 5.)

Plaintiffs contend the toxicology evidence should be excluded as irrelevant because "the officers did not know that Mr. Okamoto had drugs in his system at the time of the shooting, and have never testified that they formed any opinions about whether Mr. Okamoto was under the influence of any illegal drugs during the incident." (Doc. 104 at 5.)  Plaintiffs assert, "The effects that alcohol and/or drugs might have on a person's behavior is also a subject of expert testimony, and a proper foundation must be laid before evidence on that subject can be admitted." (*Id.* at 6, citing *Turner v. County of Kern*, 2014 U.S. Dist. LEXIS 18573 at *10-16, 2014 WL 560834 (E.D. Cal. Feb. 12, 2014).)  Because Defendants did not designate an "expert to discuss the effects of drugs and/or alcohol on a person's behavior generally, or the effects that drugs and/or alcohol would have had on Mr. Okamoto's behavior specifically," Plaintiffs argue "the Court should not allow evidence of the drugs in Mr. Okamoto's system to be introduced to explain his conduct on the date of the incident." (*Id.*)  In addition, Plaintiffs note courts have held evidence of drug use is irrelevant to the issue of liability in Section 1983 excessive force cases. (*Id.* at 6, citing *Huizar v. City of Anaheim (Estate of Diaz)*, 840 F.3d 592, 602-03 (9th Cir. 2016); *Castro v. County of Los Angeles*, 2015 U.S. Dist. LEXIS 103945 at *18-20, 2015 WL 4694070 (C.D. Cal. Aug 3, 2015); *Green v. County of Los Angeles*, 2014 U.S. Dist. LEXIS 85939 at *2-4 (C.D. Cal. June 19, 2014).  Finally, Plaintiffs contend the introduction of such evidence "will create a substantial danger of unfair prejudice to Plaintiffs because there is a significant risk that the jury will rely on that evidence in determining whether Officer Patino was justified in shooting Mr. Okamoto, or the jurors may potentially decide the case on an improper basis and return a verdict for Defendants based on a dislike for users of drugs." (*Id.* at 7.)

Defendants counter the evidence of drugs and alcohol in Decedent's system "is indisputably relevant and admissible" for four reasons.  (Doc. 107 at 5.)  First, Defendants observe that Patino was not asked whether he believed Decedent was under the influence during his deposition.  (*Id.* at 6.)  Second, Defendants assert an expert witness is not necessary for the evidence to be admitted, because courts have determined a lay witness may offer an opinion regarding whether a person appeared intoxicated.  (Doc. 107 at 6, citing *U.S. v. $80,010,000 Currency*, 2009 U.S. Dist. LEXIS 130772, at *3 (C.D. Cal. July 9, 2009); *U.S. v. Robinson*, 2017 WL 11496730 at *1 (D.D.C. June 30, 2017); *Brown v. Nabors*, 2011 WL 2443882 at *1 (M.D. Tenn. June 15, 2011), *aff'd* 427 F.3d 397 (6th Cir. 2012); *Sullivan v. City of Buena Park*, 2022 U.S. Dist. LEXIS 91684 at *8-9 (C.D. Cal. Apr. 11, 2022).)  Third, Defendants contend the toxicology evidence "is indisputably relevant to support, corroborate, and explain the officers' version of events and is [probative] on causation and comparative/contributory fault issues."  (*Id.*, citing, *e.g., Willis v. City of Fresno*, 2014 U.S. Dist. LEXIS 52565 at *21-22 (E.D. Cal. Apr. 14, 2014); *Turner*, 2014 U.S. Dist. LEXIS 18753 at *2-3; *Woods v. August*, 2019 WL 9105898 at *3 (N.D. Cal. Mar. 14, 2019).)  Finally, Defendants argue "the supportive evidence need not be known by the officers at the time force was used."  (*Id.* at 7, citing *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1079 (9th Cir. 2019).)

As Plaintiffs argue, the Ninth Circuit indicated evidence of intoxication could not be considered in determining whether force was reasonable when the officers were unaware of the intoxication. *Hayes v. County of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013).  In *Hayes*, deputies responded "to a domestic disturbance call."  *Id.* at 1227.  Although the deputies were "sent a notification that Hayes was intoxicated," neither deputy was aware of the information prior to entering the house where they used deadly force.  *Id.*  The Court determined the decedent's intoxication could not be considered on a motion for summary judgment, because the deputies were not aware of the information.  *Id.*, citing *Graham*, 490 U.S. at 396.

On the other hand, the Ninth Circuit also determined evidence of drug use—that was unknown to the officer involved—may be admissible "where what the officer perceived just prior to the use of force is in dispute."  *Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009). The Court explained where facts were disputed, "evidence that may support one version of events over

another is relevant and admissible." *Id.*, citing *Graham,* 490 U.S. at 399, n.12; *Billington v. Smith,* 292 F.3d 1177, 1180-82, 1184-85 (9th Cir. 2002) (noting witness reports and the decedent's blood alcohol level in conducting the reasonableness inquiry in an excessive force case).   Thus, the Court determined there was no error in admitting evidence that a decedent was under the influence of intoxicants at the time of a police shooting because the evidence "was highly probative of the decedent's conduct, particularly in light of [the decedent's] alleged erratic behavior..." *Id.*, 576 F.3d at 949.  Similarly, the Eighth Circuit upheld the admission of evidence that an individual had been consuming alcohol where he claimed the officers used excessive force, because "the evidence of alcohol consumption was relevant to the jury's assessment" of whether the officer's actions were reasonable "in relation to all the circumstances of the situation that confronted him."  *See Turner v. White*, 980 F.2d 1180, 1182-83 (8th Cir. 1992).

In *Turner v. County of Kern*, this Court analyzed the dichotomy of the holdings in *Boyd* and *Hayes* to determine whether evidence of a decedent's intoxication should be admitted.  *Turner*, 2014 WL 560834 at *3 (E.D. Cal. Feb. 13, 2014). The Court stated:

> The Court reads *Hayes* to mean that, if an officer does not know or believe someone to be intoxicated, evidence of intoxication may not be considered under the totality of the circumstances in assessing whether an officer acted reasonably/used excessive force. *See id.* However, *Hayes* does not say that evidence of intoxication is inadmissible for all purposes. *Hayes* neither discussed nor cited to *Boyd*. This is likely because in *Hayes*, there was no dispute about what Hayes was doing before he was shot, and there was no argument that the evidence of alcohol consumption was relevant to explain Hayes's actions. That is different from this case.

*Turner*, 2014 WL 560834 at *3.  Because the "actions and conduct" of Turner were disputed, the Court concluded "*Boyd*, and not *Hanes,* controls."  *Id.*  However, the evidence of intoxication was "relevant only to explain Turner's conduct and to corroborate the officers' version of events; the evidence is not relevant to the excessive force totality of the circumstances inquiry."  *Id.*

Courts throughout the Ninth Circuit have also admitted evidence that an individual was under the influence of drugs or alcohol where conduct was disputed, and it may support the version presented by one party.  *See, e.g.*, *Sanchez v. Jiles*, 2012 WL 13005996 at *23 (C.D. Cal. June 14, 2012) (holding evidence of intoxication was relevant under *Boyd*, because the individual's drug and alcohol use could "substantiate officers' observations," including "allegedly peculiar actions and ... refusal to obey

7

officers' commands"); *Lopez v. Aitken*, 2011 WL 672798 at *2 (S.D. Cal. Feb. 18, 2011) (evidence of "intoxication at the time of the incident" was "relevant and admissible" because it "substantiat[ed] Defendants' assertions that Mr. Lopez was acting irrationally and unpredictably at the time of the incident, and their claims that Mr. Lopez resisted arrest") (emphasis omitted); *Cotton v. City of Eureka*, 2010 WL 5154945 at *7 (N.D. Cal. Dec. 14, 2010) (holding evidence that an individual was under the influence of drugs "may be probative of his behavior at the time of the incident").

As in *Turner* and *Boyd*, the conduct of Decedent is disputed.  Officers Patino and Celedon "were dispatched 4809 Hahn Street for a call to service related to a domestic violence incident."  (Doc. 61-2 at 3, ¶ 7; and Doc. 67 at 3, ¶ 1.)  "Dispatch advised the officers that a male was possibly choking a female."  (*Id.*)  Ms. Saucedo reported that she and the decedent fell asleep and "were awakened by loud banging in [their] door."  (Doc. 68 at 2, Saucedo Decl. ¶ 7.)  However, the officers assert that they heard sounds in the apartment "which prompted them to believe that there was a struggle inside the apartment and people were arguing."  (*See* Doc. 107 at 6.)  Thus, there is clearly a dispute over whether there was an argument taking place inside the apartment when the officers arrived.  Toward that end, if Plaintiffs open the door by presenting evidence that Decedent was asleep or acting in a rational manner when the police arrived, the toxicology results may be used to corroborate the officers' version of the events.  *See Turner*, 2014 WL 560834 at *3; *Sanchez*, 2012 WL 13005996 at *23.  Accordingly, the Court **RESERVES** ruling upon the admissibility of the toxicology evidence that Decedent had drugs in his system, unless and until Plaintiffs present evidence related to the decedent's conduct.

### C.    Evidence of the text exchange (Doc. 104 at 7)

Plaintiffs indicate they believe "Defendants will attempt to introduce evidence of a profanity-laced text exchange between Christopher Okamoto and his grandmother that occurred on the night of the subject incident."  (Doc. 104 at 8.)  Defendants report that Mr. Okamoto received the following text messages from his grandmother, Barbara Okamoto, who expected to be a witness at the trial:

> Christopher you do not call me drunk or high and asking me about doing s*** okay
> I can't f****** understand anything you're saying to me and don't you blah blah
> blah me getting this isn't as simple as going to the market so when you're sober
> tomorrow and you give me a call and we'll talk
>
> Christopher this is not your phone to be shutting off okay now what the
> hell is going on why are you acting like an a******Christopher this is not your
> phone to be shutting off okay now what the hell is going on why are you acting like

8

an a******* I give you the stuff for you to sell the only time you act like a jerk Chris is when you're taking the xanax you better not have taken any you said you wouldn't you said you were only selling them the only time that you are not in your right mind is when you take those xanax

Chris u please don't take them . . . sell them ok

(Doc. 107 at 7, quoting Doc. 107 at 12 [alterations in original].)  Defendants assert this evidence should be admissible to "corroborate that the Decedent was being combative and belligerent at the time of the incident."  (*Id.* at 8.)  Defendants contend "[t]here is no reason to exclude these text messages," and the Court may issue "a limiting instruction to the jury should not consider the evidence as a 'prior bad act' but as evidence as to the conduct of the decedent, causation, and damages."  (*Id.*)

It is undisputed that Officer Patino did not know of the text messages when he responded to the apartment.  However, as discussed above, evidence of drug use may be admitted where conduct was disputed, and the evidence support the version presented by one party.  *Turner*, 2014 WL 560834 at *3; *Sanchez*, 2012 WL 13005996 at *23.  The evidence that the decedent's grandmother believed Xanax made him "act like a jerk" and "not in [his] right mind" may support the officers' version of the underlying incident. On the other hand, the evidence may bear on the question of damages. Accordingly, the Court **RESERVES** ruling upon the motion to exclude the text messages from Barbara Okamoto until the time of trial.  At that time, before the evidence is admitted, the proponent must make a showing as to the intended use for the evidence.

## IV.   Defendants' Motion in Limine No. 1 (Doc. 102 at 10)- Evidence of racial animus

Defendants seek to preclude "Plaintiffs from eliciting testimony or otherwise seeking to introduce any evidence or make any argument that the incident giving rise to this lawsuit was motivated by racial animus or was otherwise the result of Mr. Okamoto's race."  (Doc. 102 at 10.) Defendants note that Plaintiffs' counsel asked questions concerning race during the deposition of Alex Patino.  (*Id.*)  However, Defendants assert: "There is no claim in this case wherein such questions would be relevant and there is not a shred of evidence in this case that what occurred was motivated by race."  (*Id.* at 11.)  Thus, Defendants argue "there should be no effort to elicit or introduce evidence or make any argument that the shooting occurred because of the decedent's race."  (*Id.*)

Plaintiffs argue evidence related to race should be admitted because they "are requesting

punitive damages against Officer Patino in his individual capacity." (Doc. 119 at 6.) Plaintiffs contend, "It is well established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" (*Id.*, quoting *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991).) Plaintiffs also note the Ninth Circuit previously "affirmed the award of punitive damages in a Section 1983 claim where racial animus exists." (*Id.*, citing *Morgan v. Woessner*, 997 F.2d 1244, 1266 (9th Cir. 1993).) Plaintiffs assert that "[w]hile it is unclear if any such racial animus existed as the sole reason why Officer Patino shot Mr. Okamoto several times, Plaintiffs should not be precluded from asking Officer Patino whether or not he harbor[s] any type of racial animus towards African Americans and if it was any number of factors that motivated him to discharge his fire arm on several separate occasions." (*Id.*) Consequently, Plaintiffs argue "[t]he jury should be permitted to determine, for purposes of punitive damages, whether they believed that Officer Patino's actions were in any way motivated by race." (*Id.*)

In reply, Defendants maintain such evidence would be unfair, prejudicial, and "a waste of time." (Doc. 121 at 2.) Defendants contend this is "the first time" Plaintiffs have "suggest[ed] that Mr. Okamoto's race is somehow relevant to the issue of punitive damages." (*Id.* at 2.) Defendants assert they "propounded discovery seeking all facts to support Plaintiffs' claim for punitive damages and the issue of race was never mentioned." (*Id.*, citing Cohen Decl. Exh. A [Doc. 121 at 12-28].) As a result, Defendants argue this issue "was not properly disclosed by Plaintiffs" and it appears to be a "trial by ambush." (*Id.*) Defendants contend they are now "deprived of designating witnesses to rebut such an argument because it's a complete surprise that the Plaintiffs are now claiming this is somehow relevant." (*Id.* at 2.) Thus, Defendants conclude the Court should preclude Plaintiffs "from asking, suggesting, or arguing that this incident was the result of Mr. Okamoto's race." (*Id.* at 2-3.)

In the identified interrogatories—which were Interrogatory No. 6 to Ms. Nash-Perry and Interrogatory No. 8 to Mr. Okamoto—Defendants asked Plaintiffs to "state all facts which RELATE TO YOUR claim for punitive damages against Alejandro Patino." (Doc. 121 at 12 [Nash-Perry]; *id.* at 25 [Okamoto].) In response, Ms. Nash-Perry stated:

> On August 19, 2018, Defendant Officer Alejandro Patino was on duty as a
> police officer with the City of Bakersfield Police Department and was responding to

10

a call for an alleged domestic violence incident at 4809 Hanh Ave. #46, Bakersfield, California 93304 at approximately 11:30 p.m.  Defendant Patino shot Decedent 8 times without justification resulting in Decedent's death.  Decedent was at all times unarmed and posed no risk to law enforcement officers.  Defendant Patino immediately began shooting as soon as Decedent opened one of the two doors to his apartment.  Decedent remained inside his apartment and had no[t] crossed the threshold of his apartment door.  The screen door remained close[d] at all times.

Defendant Patino failed to make any warnings prior to the use of force and did not announce himself until after using deadly force.  Defendant Patino escalated to deadly force unreasonably quickly and without warning despite the availability of nonlethal alternatives.

Plaintiff was deprived of her constitutional right to her familial relationship with Decedent because of Defendant Patino's acts.  Plaintiff was dependent on Decedent for financial support.  Defendant Patino's acts constituted deliberate indifference to Plaintiff's constitutional rights and with the purpose to harm unrelated to any legitimate law enforcement objective.

Defendant Patino's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent.

(Doc. 121 at 13-14.)  Similarly, Mr. Okamoto responded, in relevant part[1]:

Patino, while acting as a BPD officer and within the course and scope of his duties, intentionally shot Decedent multiple times constituting excessive and deadly force in violation of Decedent's civil rights.  Patino had no legal justification for using said force.  The conduct of Patino was a substantial factor in causing the above harms, losses, injuries/death, and damages.  The conduct of Patino was willful, wanton, malicious, and done with reckless and conscious disregard for the rights and safety of Decedent, such than an award of exemplary and punitive damages should be imposed against Patino.

Discovery is ongoing and Plaintiff will supplement his response with additional responsive information if and when obtained.

(*Id.* at 26.)  Thus, as Defendants assert, neither Plaintiff indicated a belief, or claim, that the actions of Patino were motivated by race in their discovery responses.

Though Plaintiffs point to *Davis* to support their assertion that a jury may award punitive damages in a Section 1983 claim, Plaintiffs do not explain how this case is relevant to the issue now before the Court, as Defendants do not challenge the *availability* of punitive damages.  (*See* Doc. 119 at 6; *see also* Doc. 102 at 110-111.)  Similarly, Plaintiffs do not explain how *Morgan* is relevant to whether Plaintiffs may present evidence of a racial animus in the punitive damages phase.  In *Morgan*, the Ninth Circuit determined a judgment notwithstanding the verdict was proper where the only two factors supporting the seizure of Morgan" included: a tip "which essentially made all black men

---

[1] The Court omits the objections made to the interrogatory made by Mr. Okamoto.  (*See* Doc. 121 at 25-26.)

suspect, and the supposed fact that Morgan looked at them, turned and walked away." *Morgan*, 997 F.2d at 1254.  The Court found these facts were "insufficient to establish reasonable suspicion." *Id.* In addition, the Court found there was "no problem with the imposition of some punitive damages in [the] case." *Id.* at 1255.  However, the Ninth Circuit determined "the district court failed to record its reasons for finding the punitive award proper." *Id.* at 1257.  Therefore, the Court remanded the punitive award for the district court to analyze and "record its reasons for its conclusion." *Id.*

Unlike in *Morgan*, where the plaintiff's race was clearly in issue— as race was identified as a factor motivating the actions of the agents, who received a tip that "essentially made all black men suspect"— Plaintiffs have not made any allegations concerning a racial motivation by Patino in this action.  Indeed, it does not appear Plaintiffs even identified Decedent's race in the operative complaints.  (*See generally* Doc. 38; *see also* Case No. 1:19-cv-01125-LJO-JLT, Doc. 1 at 1-13.) There also were no causes of action related to racial discrimination raised by Ms. Nash-Perry or Mr. Okamoto in their respective complaints.  Finally, as noted above, when asked to identify the bases for punitive damages in the written discovery, neither plaintiff asserted a belief that the actions of Patino were motivated by Decedent's race.  Thus, Plaintiffs' reliance upon *Morgan* appears misplaced.

Because Plaintiffs did not previously identify Decedent's race as an issue in this action— whether in a claim or discovery related to damages—any evidence on racial animus is irrelevant and would be prejudicial to Defendants.  Accordingly, the motion to exclude any evidence that the underlying incident "was motivated by racial animus" is **GRANTED**.

## V.      Defendants' Motion in Limine No. 2 (Doc. 102 at 11)- Evidence related to officers moving Decedent's gun

Defendants assert that "once police officers were able to open the door to Mr. Okamoto's apartment, Officer Malley kicked the gun away from Mr. Okamoto's reach for safety purposes and then later, Officer Blanchard directed Officer Mosueda to move the gun back to its original position so that the scene could be photographed."  (Doc. 102 at 11.)  Defendants observe, "Officer Patino had no involvement in either kicking the gun or moving it back to its original position."  (*Id.*)  Defendants request the Court exclude evidence related to "the conduct of other officers post incident in kicking the gun away and in replacing it for purposes of photographing the scene."  (*Id.* at 12.)

Defendants contend the fact that the gun was moved is "irrelevant under Fed. R. Evid. 401 because it does not assist in the legal or factual determinations that will be made by a jury in this case." (Doc. 102 at 11.)  In addition, Defendants argue such "evidence is inadmissible under Fed. R. Evid. 403 because any probative value that evidence might have is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time." (*Id.*)

Plaintiffs contend Defendants are, in essence, attempting to re-litigate the motion for summary judgment. (Doc. 119 at 7.)  Plaintiffs assert: "The Court observed in its August 31, 2021 Order … that such information is relevant because physical evidence 'can be interpreted to support a factual narrative that contradicts the narrative asserted by Defendants." (*Id.*, citing Doc. 79 at 26 [quoting *Aguilar v County of Fresno*, 2010 WL 1267355 at *4 (E.D. Cal. Mar. 31, 2010)].)  Plaintiffs argue the "position of the gun is highly relevant to determining whether Mr. Okamoto was holding the bb gun at the time of the shooting, what hand he was holding the gun in and what position of the body if any the gun was next to in relation to Mr. Okamoto falling after being shot." (*Id.*)  According to Plaintiffs:

> There is physical evidence and testimony that contradicts where the gun was positioned immediately following the shooting and where it was ultimately placed after the shooting.  The officer who placed the gun in the position near Mr. Okamoto's left hand was not the officer who allegedly kicked the gun, the officer also never took pictures of where he found the gun, which was purported to be found under the couch.

(*Id.*)  Further, Plaintiffs assert "[t]he improper placing of the gun can be determined as misleading, especially if the officers are claiming that there was a gun directly next to Mr. Okamoto's body upon entry of the property…" (*Id.*)  Plaintiffs maintain the failure "to properly document where the gun was found" permits them "to challenge the testimony of these officers." (*Id.* at 8.)  For example, Plaintiffs contend "it could be easily argued that Mr. Okamoto either threw the gun when he saw the officers, or that there was never a gun in his hand when he opened the door, and that it was always under the couch." (*Id.* at 7.)

In reply, Defendants contend Plaintiffs' argument "is nothing more than a smoke screen." (Doc. 121 at 3.)  Defendants note Plaintiffs do not "reference… any claim that this post incident conduct would be relevant to proving or disproving." (*Id.*)  Defendants maintain the evidence "is extraneous to the issues that will actually be decided by the jury" and "would be completely unfair and

13

1  prejudicial to [Defendant] Patino to allow this evidence to be introduced when he had nothing to do

2  with it." (*Id.*)

3         Based upon the representations of the parties, it appears there may be disputes as to whether

4  the gun was kicked by an officer, and whether the placement was proper in the photographs.  Clearly,

5  where the gun fell is relevant to the issues to be decided by the jury.  However, it is unclear whether

6  the evidence the gun was moved is relevant to the liability of Officer Patino.  Therefore, the Court

7  **RESERVES** ruling on the admissibility of such evidence, unless and until Plaintiffs make a showing

8  that evidence related to the gun being moved by another officer is relevant.

9  **VI.**    **Defendants' Motion in Limine No. 3 (Doc. 102 at 12)- Bullet trajectory and location of**

10  **Decedent's wounds**

11         Defendants seek exclusion of any argument that "the location of the bullet wounds was

12  inconsistent with Officer Patino's testimony that Mr. Okamoto had been pointing his gun at Officer

13  Patino."  (Doc. 102 at 12.)  Defendants assert this was raised for the first time in the motion for

14  summary judgment, but "was not disclosed during the course of discovery by either Plaintiff and, even

15  more significantly, was not included in any opinion by any expert designated by the Plaintiffs."  (*Id.*)

16  Defendants argue:

17        Plaintiffs did not designate any expert who opined on biomechanics, bullet trajectory,
      or any other area which would support Plaintiffs' counsel's theory that "the physical

18        evidence, which includes the anatomical location and direction of the gunshot wounds
      sustained by Mr. Okamoto, contradict Officer Patino's claim that Mr. Okamoto

19        was pointing the BB gun with his right hand directly at Officer Patino's head."

20  (*Id.*, quoting Doc. 64 at 20-28 [emphasis omitted].)  Defendants note that courts determined ballistic

21  evidence requires an expert competent to testify on the matter, and without such an expert, "there is no

22  witness … that can testify at trial on this issue."  (*Id.* at 12-13.)

23         Plaintiffs argue that "the location of the bullets, the physical evidence, does not require an

24  expert and only requires common sense."  (Doc. 119 at 8.)  Plaintiffs postulate: "If one argues that I

25  shot someone in the head but the bullet hits someone in the knee, you don't [need] an expert witness to

26  testify that the officer's placement of … himself in relation to where he discharged the firearm and shot

27  the individual does not require an expert."  (*Id.*)  According to Plaintiffs, the jurors can determine

28  "whether they believe Officer[] Patino's testimony that Mr. Okamoto was pointing a gun at him during

14

each and every bullet he discharged from his firearm based upon where each bullet hit Mr. Okamoto's body."  (*Id.*)

Notably, the hypothetical posed by Plaintiffs is not similar in any manner to the argument made in opposition to the motion for summary judgment because Plaintiffs did not suggest Decedent was struck in an entirely different body part than Officer Patino indicated.  Rather, Plaintiffs asserted their "analysis of the gunshot wounds that [the decedent] sustained demonstrates that [the decedent] could not have been facing Officer Patino in a 'one-handed shooting stance' and pointing an object at Officer Patino during the entirety of the time that Officer Patino was firing his weapon."  (Doc. 79 at 21.) Plaintiffs argued:

> The locations and trajectories of those wounds, including two gunshot wounds to the outer left chest that traveled front to back and left to right (east to west direction), are consistent with a movement in which [the decedent] was rotating away from Patino in a westerly direction in an attempt to retreat while trying to close the front door with his left arm, exposing his entire left side of his body to Officer Patino's gunfire. A jury could find from this physical evidence that [the decedent] did not pose an immediate threat of death or serious bodily injury to Officer Patino at the time of either the first or second volley of shots fired in [the decedent] direction.

(*Id.*)  According to Plaintiffs, "[b]ased upon the upon the physical evidence, we know that it would have been virtually impossible to achieve the gunshot wound positioning and trajectories if you relied on Officer Patino's statements."  (*Id.* at 24.)

As Defendants argue, courts have determined that bullet trajectories are within the province of experts, rather than lay persons.  *See, e.g., Krause v. County of Mohave*, 459 F.Supp. 1258, 1265-1266, (D. Az. 2020) ("[B]ullet trajectory analysis is highly technical area, subject to peer-reviewed research, and some degree of standardization. Ballistics testimony requires specialized expertise."); *United States v. Scheffer*, 523 U.S. 303, 312 (1998) (identifying fingerprinting and ballistics as "factual matters outside of the jurors' knowledge" to which an expert witness must testify); *see also Reese v. County of Sacramento*, 2016 WL 3126055 (E.D. Cal. June 2, 2016) (indicating that during the trial, the Court precluded a lay witness "from giving expert-type testimony about bullet trajectories"), *rev'd on other grounds*, 888 F.3d 1030 (9th Cir. 2018); *Dominguez v. City of Los Angeles*, 2018 WL 6164278, at *9 (C.D. Cal. Oct. 9, 2018) (observing that because "experts still must be qualified to form the opinions that make up their testimony,… [r]eading a coroner's report does not transform a police practices

expert into an expert on bullet trajectory analysis").

It follows that opinions based upon bullet trajectories—such as identifying a person's position or manner in which a weapon was held based upon the flight path of a bullet— are also reserved to expert witnesses.  *See, e.g., McGrath v. Tavares*, 757 F.3d 20, 26-27 (1st Cir. 2014) (photographs of bullet holes were insufficient to show where an officer stood when he fired his gun "without expert testimony on the trajectory of a bullet"); *Barillas v. City of Los Angeles*, 2021 WL 4434977 n.8, n.10 (C.D. Cal. Apr. 12, 2021) (indicating the expert witnesses could testify regarding the decedent's "hand position as long as [their] testimony [was] based on bullet trajectory"); *Dominguez*, 2018 WL 6164278, at *9 (holding the coroner's report could not be used by an expert not qualified in ballistics to give an opinion based upon bullet flight path).  Consequently, Plaintiffs are unable to present lay witness evidence related to the *trajectory* of the bullets or use the coroner's report and photographs to argue that the location of Decedent's wounds were inconsistent with him pointing a gun.  Thus, Defendants' motion in limine to exclude such lay witness evidence is **GRANTED**.

## VII.    Defendants' Motion in Limine No. 4 (Doc. 102 at 14)- Exclusion of expert opinions

Defendants seek to exclude certain opinions from Richard Bryce, Plaintiffs' police procedures expert.  (Doc. 102 at 14.)  Defendants note that Mr. Bryce gave the following "opinions and observations" in his report:

> 1.    Officer Alejandro Patino unnecessarily used deadly force when he had other options available to him.
> 2.    Officer Patino failed to inform Mr. Okamoto that he was going to use deadly force prior to shooting him.
> 3.    Officer Patino's commands to open the door were not necessarily decipherable to Mr. Okamoto's [sic] while he was in his apartment.
> 4.    Officer Patino did not attempt to de-escalate the confrontation with Mr. Okamoto rather than immediately begin shooting him eight times.

(*Id.* at 14, quoting Bryce Report pp. 2-4 [Doc. 102 at 86-87].)  In addition, Mr. Bryce stated his "ultimate opinion" as follows:

> It is my opinion based on the facts and materials presented to me, that when Officer Patino confronted Mr. Okamoto at the door of his residence, Mr. Okamoto was unaware that it was a police officer banging on his door. He apparently approached the door with a BB gun in an attempt to dissuade whoever was at the door from entering his apartment.
>
> When Officer Patino observed the BB gun in Mr. Okamoto's hand he immediately, without warning, began firing at Mr. Okamoto through the locked security door.

> Officer Patino had ample time and space to step to the right side of the doorway, using the exterior wall of the wall of the apartment and the locked security door as cover, and should have attempted to gain compliance from Mr. Okamoto before using deadly force.
>
> It is my opinion based on the information I have received and my prior experience as a peace officer, that it was not necessary for Officer Patino to shoot and kill Mr. Okamoto to protect his own safety.

(Doc. 102 at 14, quoting Bryce Report pp. 4-5 [Doc. 1-2 at 87-88].)  Defendants contend these "opinions are fatally flawed and should be excluded." (*Id.* at 15.)

Plaintiffs oppose the motion, arguing the testimony is relevant, not speculative, and will assist the jury.  (Doc. 111 at 6-10.)  Plaintiffs report: "Even though Mr. Bryce uses the words 'necessary' or 'unnecessary' to describe Officer Patino's use of deadly force in his Rule 26 Report, that is not how Mr. Bryce testified in his deposition.  For example, Mr. Bryce testified as to the reasonableness of the officers' actions at Apartment 46." (*Id.* at 6.)  In addition, Plaintiffs assert that Mr. Bryce replied on California's Peace Officer Standards and Training (POST) domains, the "Bakersfield Police Department Training Bulletin on Use of Force Considerations, and Bakersfield Police Department Use of Force Policy." (Doc. 111 at 7.)  Having relied on these documents, Plaintiffs contend that "Mr. Bryce used reliable methodology" and his "testimony on the proper police procedures and policies is both relevant and admissible." (*Id.*)

## A.    Expert witnesses

Under the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702.  Such expert testimony is permissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The District Court has the "'special obligation' to determine the relevance and reliability of an expert's testimony... to ensure accurate and unbiased decision-making by the trier of

17

fact." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002).

**B.** **Legal conclusions cast as opinions**

The Ninth Circuit determined that "an expert witness cannot give an opinion as to [his] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.2004) (quoting *Mukhtar v. California State University*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (emphasis in original); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law…. They do not testify about the law.").  Such an opinion does not assist the jury in making a decision, but instead "attempts to substitute the expert's judgment for the jury's." *Mukhtar*, 299 F.3d at 1066 n.10 (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

The Federal Rules of Evidence "permit[] opinion testimony which touches upon ultimate factual issues to be determined by the trier of fact." *Baltimore v. Haggins*, 2013 WL 4676455 at *2 (E.D. Cal. Aug. 30, 2013), citing Fed. R. Evid. 704(a).  However, courts frequently prohibit experts from using "judicially defined and/or legally specialized terms in expressing [their] opinions." *Monroe v. Griffin*, 2015 WL 5258115, at *6-7 (N.D. Cal. Sept. 9, 2015).  In a case regarding the use of excessive force, the ultimate question is whether the conduct of the officer was objectively reasonable.  *See Graham*, 490 U.S. at 397; *al-Kidd*, 563 U.S. at 736 (liability may not attach unless the actions of the officer were objectively unreasonable).  As a result, courts have determined experts in excessive force cases may not testify conduct was "grossly unlawful, unnecessary, and excessive violence." *Monroe v. Griffin*, 2015 WL 5258115, at *6-7 (N.D. Cal. Sept. 9, 2015); *see also Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) (excluding expert testimony that "the use of force was 'excessive' or 'unreasonable,' under the circumstances"); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (precluding expert testimony that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper"); *Norman v. City of Lorain*, 2006 WL 5249725 at *3 (N.D. Ohio Nov. 27, 2006) (holding the expert could "not testify that the force used by [the officer] was 'unreasonable' or 'unnecessary'").

As set forth above**,** Mr. Bryce concluded that Officer Patino "*unnecessarily used deadly force when he had other options available*" and "*it was not necessary for Officer Patino to shoot and kill Mr.*

1   Okamoto to protect his own safety."  (Doc. 102 at 85, 88 [emphasis added].)  These were legal

2   conclusions, drawn from his interpretation of disputed facts, which intrude upon the issues to be

3   resolved by the jury.  *See Monroe v. Griffin*, 2015 WL 5258115, at *6-7; *DeMerrell v. City of*

4   *Cheboygan*, 206 Fed. App'x 418, 426 (6th Cir. 2006) (finding the court properly excluded an expert's

5   conclusion the use of deadly force was "improper and unnecessary" because it was a legal conclusion).

6   Accordingly, the motion to exclude these conclusions is **GRANTED**.[2]

7       **C.    Opinions related to whether Decedent was aware the police were at the door**

8       Defendants contend Mr. Bryce should not be permitted to testify that commands made by

9   Officer Patino "to open the door were not necessarily decipherable to Mr. Okamoto[] while he was in

10  his apartment" is speculative.  (Doc. 102 at 18.)  In addition, Defendants contend Mr. Bryce should not

11  be permitted to testify as to his conclusion that "Mr. Okamoto was unaware that it was a police officer

12  banging on his door and that [Okamoto] apparently approached the door with a BB gun in an attempt to

13  dissuade whoever was at the door from entering his apartment."  (*Id.*)  Defendants contend these

14  statements are "based on nothing more than conjecture and speculation."  (*Id.*)  According to

15  Defendants, to reach these conclusions, Mr. Bryce made "inappropriate assumptions and credibility

16  determinations," because "Mr. Bryce has no idea what Mr. Okamoto heard or didn't hear and has no

17  idea why he brought the BB gun to the door… [and] no idea if Mr. Okamoto knew it was a police

18  officer banging on his door."  (*Id.*)

19      Plaintiffs argue the challenged statements were not speculative, but rather "based on the data

20  and information that he relied upon in developing his opinions."  (Doc. 111 at 8.)  According to

21  Plaintiffs, "Mr. Bryce used deposition testimony of key witnesses, interviews of officers, supplemental

22  reports by officers, and photographs of the interior and exterior of Apartment 46, where Mr. Okamoto

23  was killed."  (*Id.*)

24      Contrary to Plaintiffs' argument, Mr. Bryce did not indicate in the report that he relied upon the

25  _____

26  [2] Nevertheless, an expert on police procedures may offer opinions as to how a reasonably well-trained officer would
    respond in circumstances such as those confronting the officer who used force, and such opinions may be obtained through

27  hypothetical questions.  *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994); *see also Valtierra*, 99 F. Supp. 3d at
    1198 (excluding expert testimony that involved legal conclusions but allowing the expert's opinions to "be explored

28  through hypothetical questioning so as to avoid invading the province of the jury").

1    identified evidence in reaching these opinions.  Instead, to support the third "opinion and observation,"

2    Mr. Bryce cited only the depositions of Brittany Saucedo, Officer Patino, and Edward White.  (Doc.

3    102 at 86.)  Moreover, no one—expert or not—can testify as to what the decedent was thinking.

4    Indeed, what the decedent was thinking is not at issue. Rather, the question is whether the officers acted

5    reasonably in response to the information known or reasonably should have been known.[3]

6         The parties dispute what was occurring in the apartment when the officers arrived—including

7    whether Decedent was awake or whether there was an ongoing argument. The jury, rather than any

8    expert—will determine the factual disputes. Weighing the credibility of witnesses and resolving factual

9    matters is not within the purview of an expert but are instead the precise roles assigned to the jury.  *See*

10   *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985) (stating that witness credibility is a matter

11   for the jury and expert testimony on the subject invades the province of the jury); *see also Nimely v.*

12   *City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) ("It is a well-recognized principle of our trial

13   system that determining the weight and credibility of a witness's testimony …. belongs to the jury")

14   (internal quotation marks, brackets, and citation omitted).  Thus, the motion to exclude the opinions

15   concerning the perception of Decedent is **GRANTED**.

16        For these same reasons, there is no basis for the opinion that Decedent "apparently approached

17   the door with a BB gun in an attempt to dissuade whoever was at the door from entering his

18   apartment."  (*See* Doc. 102 at 87-88.)  Instead, it appears to be pure speculation on the part of Mr.

19   Bryce as to the motivation of Decedent.  As the Ninth Circuit explained, Rule 702 of the Federal Rules

20   of Civil Procedure requires expert testimony that "does not exclude unsupported speculation and

21   subjective beliefs."  *Guidroz-Brault v. Missouri Pacific R. Co*., 254 F.3d 825, 829 (9th Cir. 2001)

22   (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 579, 589 (1993)).  Because there is no basis

23   for the opinion, it is also improper, and the motion to exclude the statement concerning Decedent's

24   motivation is **GRANTED**.

25   ///

26

27   ――――――――――――――――
     [3] The Court is not overly persuaded by the fact that when forming his opinions and writing his report, Mr. Bryce
28   must have decided which evidence to rely upon and which evidence to reject. Presumably, the defense expert
     has done the same. The extent to which any expert's opinions are valuable, depends is whether they rely upon
     the evidence the jury accepts.

#### D.      Opinions challenged as unhelpful to the jury

Defendants assert that "Mr. Bryce's second 'opinion' – that Officer Patino failed to inform Mr. Okamoto that he was going to use deadly force prior to shooting him – and his fourth 'opinion' that Officer Patino did not attempt to de-escalate the confrontation[] are not helpful to the jury." (Doc. 102 at 18.)  Defendants argue these are "not opinions which require expert testimony but are simply facts which will be elicited from Officer Patino."  (*Id.*)  In addition, Defendants note that Mr. Bryce did "not pair these two facts with any expertise or experience," such as opining "what a reasonable officer would have done or what proper police practices would be under the circumstances or what training required or what is contained in the POST learning domains."  (*Id.* at 18-19.)  Thus, Defendants contend the second and fourth opinions "are not helpful to a jury and should be excluded."  (*Id.* at 19.)

Plaintiffs assert that "Defendants' argument is entirely false as Mr. Bryce includes several materials including but not limited to 'POST Domain 20 regarding Use of Force instructs; 'Peace officers should remember that even when they have the authority to use force, they should consider the least intrusive force option.'"  (Doc. 111 at 10.)  Plaintiffs contend that as a result, the "opinions will be helpful to the jury and should not be excluded."  (*Id.*)

The "central concern" of Rule 702 is whether expert testimony "is helpful to the jury." *Mukhtar*, 299 F.3d at 1063 & n.7.  In general, to be admissible as helpful to the jury, "the expert testimony must address an issue beyond the common knowledge of the average layman." *Id.* at 1066 n. 9; *see also Moses v. Payne*, 543 F.3d 1090, 1101 (9th Cir. 2008) ("Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading").  However, the Ninth Circuit indicated courts "must be cautious not to overstate the scope of the average juror's common understanding and knowledge." *United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002).

The challenged second and fourth "opinions and observations" from Mr. Bryce are simply facts that may be determined by the jurors following lay witness testimony.  A review of scientific data or methodology was not required even for Mr. Bryce to reach these conclusions, and similarly would not be required for jurors.  For example, the jurors may clearly determine whether Patino offered a warning without assistance from an expert.  Similarly, the determination that Patino did not make any attempt to

de-escalate the situation prior to firing his weapon does not require "any "scientific, technical, or other specialized knowledge." Thus, the Court finds the challenged "opinions and observations" would not be helpful for the jury, and the motion to exclude these statements is **GRANTED**.[4]

**VIII.   Defendants' Motion in Limine No. 5 (Doc. 102 at 19)- Testimony regarding what Decedent knew or believed**

Defendants seek to "preclude testimony from Ms. Saucedo or others as to what they believed Decedent Christopher Okamoto knew or believed." (Doc. 102 at 19, emphasis omitted.) Defendants note that in a declaration, Ms. Saucedo stated she "perceived that Chris did not know who was at the door either..." and she "could perceive that Chris did not know [who was] banging on our door based on him asking who was at the door." (*Id.*; *see also* Doc. 68 at 2-3, ¶¶ 9, 17.) In addition, Defendants contend Mr. Bryce opined "Mr. Okamoto was unaware that it was a police officer pounding on the door." (*Id.*) Defendants contend these statements are "entirely speculative and should not be permitted into evidence." (*Id.*)

### A.    Statement from Mr. Bryce

Plaintiffs do not oppose the motion to the extent Defendants seek to exclude the opinion of Mr. Bryce, and challenge only the motion related to statements from Ms. Saucedo. (*See* Doc. 119 at 8-9.) Accordingly, to the extent Defendants seek to exclude the identified opinion from Mr. Bryce that Decedent "was unaware that it was a police officer pounding on the door," the motion is **GRANTED**.

### B.    Statement from Ms. Saucedo

Plaintiffs argue Ms. Saucedo "can testify to any firsthand knowledge as to what she believed Mr. Okamoto knew based upon the present sense impression exception" to the hearsay rule. (Doc. 119 at 9.) Plaintiffs assert that "[s]uch beliefs or opinions based upon what Ms. Saucedo was perceiving at that time is admissible under the present sense impression exception for statements 'describing or explaining an event or condition, made while or immediately after the declarant perceived it.'" (*Id.*, quoting Fed. R. Evid. 803(1).) Thus, Plaintiffs conclude that "Ms. Saucedo can describe whether Mr. Okamoto, based upon her observations of him and what she was hearing at the time, gave her the

---

[4] Again, however, Mr. Bryce may testify as to the POST Domain concerning the Use of Force, and how a well-trained officer will act according to the training. *See Duncan*, 42 F.3d at 101; *see also Valtierra*, 99 F. Supp. 3d at 1198.

impression that []he did not know who was at the door."  (*Id.*)

### 1. Hearsay and present sense impression

Hearsay statements are those "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  Such statements are inadmissible unless a statement falls within a recognized exception to the hearsay rule.  *See, e.g.,* Fed. R. Evid. 803.  For example, the "present sense impression" exception applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  To qualify for this exception, "the declarant must… have personal knowledge of what she describes."  *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995).

Plaintiffs fail to establish the present sense impression exception applies to the statements of Ms. Saucedo.  The challenged statements concerning her perception that Decedent "did not know who was at the door" and she "could perceive that Chris did not know [who was] banging on [the] door based on him asking who was at the door" were not "made while or immediately after" underlying incident. Rather, the statements were made by Ms. Saucedo in her declaration, dated July 26, 2021, nearly three years after the underlying incident.  (*See* Doc. 68.)

### 2 Lay witness opinion

Pursuant to Rule 701 of the Federal Rules of Civil Procedure, a lay witness may offer "testimony in the form of an opinion" if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Civ.P. 701.  The phrase "rationally based on" under Rule 701 "means the opinion is one that a normal person would form on the basis of the observed fact."  *Cal. Found for Indep. Living Centers v. County of Sacramento*, 142 F.Supp.3d 1035, 1045 (E.D. Cal. 2015).  Thus, to be admissible, lay opinion must be based on "facts perceived from [the witness's] own senses."  *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006); *see also United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (noting that "Rule 701 does not interdict all inference drawing by lay witnesses" but such "inferences must be tethered to perception, to what the witness saw or heard").

On the other hand, testimony from a lay witness is "unhelpful and thus inadmissible if it is mere speculation, an opinion of law, or if it usurps the jury's function." *Cal. Found for Indep. Living*, (2015) (citing 4 J. Weinstein & M. Berger, Weinstein's Evidence § 701.03[3] (2d ed. 2014)); *see also United States v. Freeman,* 498 F.3d 893, 905 (9th Cir. 2007) (speculative testimony was inadmissible); *Fireman's Fund Ins. Co. v. Alaskan Pride Pshp.*, 106 F.3d 165, 1468, n.3 ("Testimony that simply tells the jury how to decide is not considered 'helpful' as lay opinion"); *United States v. Crawford,* 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness may not… testify as to a legal conclusion").

Previously, the Court determined that "the statement that Ms. Saucedo 'perceived that Chris did not know who was at the door either,'… is supported by the personal observations of Ms. Saucedo who also reported she 'heard Chris continuously ask, who was out our door, or words to that effect.'" (Doc. 79 at 13, quoting Doc. 68 at 2, ¶ 10.)  Because the statements of Ms. Saucedo were based upon her "own senses" and what she heard, the testimony of Ms. Saucedo is based upon her own perception and is not mere speculation.  Further, it would be helpful to the jury to know whether Decedent was aware of the presence of the police in considering the totality of the circumstances, and the statement does not require specialized knowledge.  Consequently, to the extent Defendants seek to exclude the identified statements of Ms. Saucedo, the motion is **DENIED**. However, before Ms. Saucedo states her opinions in this regard, the plaintiffs **SHALL FIRST** establish the adequate foundational facts,

**IX.    Defendants' Motion in Limine No. 6 (Doc. 102 at 20)- Testimony from Mr. Brown**

Defendants seek to prevent certain testimony from Tim Brown, a neighbor of Decedent and Brittney Saucedo.  (Doc. 102 at 20.)  Specifically, Defendants to preclude Mr. Brown from testifying that he was a former minister and went to church the day of the incident.  (*Id.* at 20-21.)  In addition, Defendants assert Mr. Brown "should not be permitted to offer opinions regarding the propriety of Officer Patino's use of force."  (*Id.* at 21, emphasis omitted.)  Plaintiffs contend the motion should be denied.  (Doc. 115 at 4-5.)

**A.    Ministry and church attendance**

Defendants report, "In preparing for Mr. Brown's deposition, it was discovered that he used to be a minister years before the subject incident," though he worked as a crossing guard at the time he was deposed.  (Doc. 102 at 21.)  Mr. Brown also testified he went "to church earlier in the day" of the

24

underlying incident.  (*Id.*)  Defendants contend "[s]uch evidence is entirely irrelevant and would be solely to bolster his credibility and ingratiate himself with jurors."  (*Id.*)  Plaintiffs oppose exclusion of the evidence, asserting that with these arguments, asserting "Defendants have not provided any information whatsoever, as to why this evidence would be irrelevant or prejudicial to Defendants." (Doc. 115 at 4.)

As Defendants argue, Mr. Brown's work as a minister and church attendance may bolster his credibility with the jurors, one who may be trusted.  Regardless, neither Mr. Brown's former vocation nor his activities on the day prior to the underlying incident are relevant to the issues to be decided by the jury concerning the actions of Officer Patino.  Accordingly, the motion to exclude evidence related to Mr. Brown's former ministry and church attendance is **GRANTED**.

### B.    Opinions regarding the use of force

Mr. Brown was asked why he agreed to testify and responded, after an objection, that he "believed it was wrong and could have been handled differently" and "Chris was not a threat."  (Doc. 102 at 21, citing Brown Depo. 37:1-44:16; 67:10-19 [Doc. 102 at 106-114].)  Defendants contend this testimony "is entirely improper and should be excluded," because Mr. Brown did not visually perceive the incident and there is no rational connection between his opinion and the facts upon which it was based.  (*Id.* at 21, 22.)  Further, Defendants contend the opinion testimony would be a violation of Rule 403 of the Federal Rules of Evidence, because it "would necessarily require extensive cross examination about all the things Mr. Brown did not see (which was everything) and what he did not hear (since he was downstairs and did not hear everything that occurred)."  (*Id.* at 22.)

Plaintiffs argue that "Mr. Brown should be permitted to offer testimony regarding the incident that he witnesse[d]."  (Doc. 115 at 5, emphasis omitted.)  Plaintiffs assert:

> Mr. Brown's testimony is based on what he heard on the night of the incident as he was at home in his apartment directly below decedent.  Mr. Brown further testified that he heard noises upstairs, he heard "Bakersfield PD" and then heard "pop, pop, pop" and heard Mr. Okamoto say "oh" followed by a loud thump. [Citation.]  Mr. Brown's testimony was in no way elicited by Plaintiffs' counsel when Plaintiffs' counsel asked Mr. Brown why he agreed to provide testimony.

(*Id.*, citation omitted.)  Plaintiffs contend, "Although Mr. Brown did not visual perceive the incident there is a rational connection between his opinions as stated in his deposition and what he heard on the

25

night of the incident." (*Id.* at 6.)

In reply, Defendants argue that it is "clearly improper" for Mr. Brown to offer opinions that "Officer Patino should not have used deadly force." (Doc. 121 at 7.)  Defendants observe, "Mr. Brown did not see anything that occurred," including "what Officer Patino was confronting." (*Id.*)  Defendants contend Mr. Brown "render[ed] his opinion from inside his downstairs apartment which clearly invalidates any opinion he could possibly officer in terms of the propriety of Officer Patino's use of force." (*Id.*)

Notably, from the downstairs apartment, Mr. Brown was unable to see Mr. Okamoto or know whether he pointed a gun at the officer. Thus, Mr. Brown had limited knowledge of the situation encountered by Patino.  Moreover, Mr. Brown's beliefs that the situation may have been handled differently or that Decedent "was not a threat" are improper lay witness opinions.  Lay witnesses—such as Mr. Brown— may not give opinions about police tactics or opine whether officers used excessive force.  *See Chien Van Bui v. City & County of San Francisco*, 2018 WL 1057787, at *7 (N.D. Cal. Feb. 27, 2018) ("Lay witnesses may testify as to what they saw and the situation as they perceived it, but they may not testify as to conclusions of whether the force the defendants used was excessive, unreasonable, or greater than necessary"); *Tan v. City & County of San Francisco*, 2010 WL 726985, at *3 (N.D. Cal. Feb. 26, 2010) (granting a motion in limine to exclude a lay witness' opinion about "whether the force [used] was greater than necessary," finding the "proposed testimony regarding excessive force constitutes expert witness testimony").  Consequently, the motion to exclude the opinions of Mr. Brown, as identified above, is **GRANTED**.

## X.     Defendants' Motion in Limine No. 7 (Doc. 102 at 23)

Defendants seek "to exclude reference to Decedent not having any past criminal history or that Decedent was 'the father of a newborn baby girl.'" (Doc. 102 at 23, emphasis omitted.)  Defendants note these facts were "specifically included … in various portions of the Pretrial Conference Statement," and argue "they are simply not relevant to any issue being decided in this case." (*Id.*)  Plaintiffs argue the motion "should be denied because [the evidence] is relevant to the litigation at hand and their motion is premature." (Doc. 112 at 4.)

///

### A.      Decedent's lack of criminal history

In general, an individual's criminal history has no likelihood of proving any material facts relevant to claims for excessive force.  However, evidence regarding a decedent's prior criminal history, or lack thereof, may be relevant and admissible in an excessive force case if the officers were aware of such information at the time of the incident.  *See, e.g., Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (affirming admission of officers' testimony concerning "the facts known to them regarding [plaintiff]'s criminal past"); *Glenn*, 673 F.3d at 873 n. 8 (declining to "consider evidence of which the officers were  unaware").  Plaintiffs do not present any evidence that the responding officers, including Patino, were aware that Decedent did not have a criminal history.  Further, Plaintiffs do not show how the evidence is relevant—despite Patino's lack of knowledge—to the matters to be resolved by the jury.  Accordingly, the motion to exclude evidence related to Decedent's lack of a criminal history is **GRANTED**.

### B.      Statements related to fatherhood

Defendants assert that statements concerning Mr. Okamoto being "the father of a newborn baby girl" should be excluded.  (Doc. 102 at 23.)  Defendants note the claims of Z.S. "were adjudicated because, in fact, she was not the biological daughter of Mr. Okamoto and did not meet … criteria under the law to qualify as a non-biological child." (*Id.*)  Thus, Defendants contend the statement is "factually misleading." (*Id.*)  Defendant also assert such a statement is "irrelevant as Officer Patino obviously did not know such information and it has no bearing on the conduct of anyone involved in this incident," and does not relate "to any issue that will be decided by the jury since the child is not a lawful heir." (*Id.*)  As a result, Defendants argue that calling Decedent "the father of a newborn baby … would serve no purpose other than to attempt to elicit sympathy and a larger damage award." (*Id.*)

Plaintiffs acknowledge that "Ms. Saucedo's daughter was not Mr. Okamoto's biological daughter." (Doc. 112 at 4.)  However, Plaintiffs contend "it is important to note that Ms. Saucedo's daughter was inside Apartment 46 at the time of the incident and Mr. Okamoto treated Ms. Saucedo's daughter as if she was his own." (*Id.*)  Plaintiffs request the Court deny the motion to exclude statements that "the decedent was 'the father of a newborn baby girl.'" (*Id.* at 5.)

Notably, contrary to Plaintiff's suggestion, Defendants do not seek exclusion of all facts related

27

to Z.S., such as her presence in the apartment or that Decedent treated her as his own child.  Limiting

the parties and witnesses from referring to Mr. Okamoto as "the father of a newborn baby girl" would

not preclude them from testifying about the relationship Mr. Okamoto had with Z.S. or cause prejudice

to Plaintiffs.  Thus, Defendants' motion in limine is **GRANTED**.

**XI.** **Defendants' Motion in Limine No. 8 (Doc. 102 at 24)- Photographs of Decedent**

Defendants seek to exclude "any pre-incident photos of Mr. Okamoto or any post-death photos

of him." (Doc. 102 at 24.)  Plaintiffs oppose the motion, asserting that such photographs are generally

permitted by courts.  (Doc. 119 at 9-10.)

**A.** **Pre-incident photographs**

Defendants observe that Plaintiffs identified six categories of documents in the Joint Pretrial

Statement and argue none of the identified documents "encompass pre-incident photographs of Mr.

Okamoto," and such photos should be excluded because they were not included in the list of exhibits.

(Doc. 102 at 24.)  Defendants also assert pre-incident photographs "are not probative on any of the

issues" in the matter, and should be excluded as irrelevant.  (*Id.*)  Finally, Defendants contend such

photos are unduly prejudicial, because "[t]he sole purpose … would be to arouse the passions of the

jury, elicit sympathy, and otherwise inflame the jury against Defendants." (*Id.* at 25.)

Plaintiffs argue that "the admission of pre-incident photographs is … highly relevant and

routinely permitted in wrongful death cases in order to prove damages." (Doc. 119 at 9.)  Plaintiffs

contend they "are entitled to show that each of them shared a relationship with their son, and there is

no better way to show such physical evidence than through the presentation of photographic and video

evidence." (*Id.* at 9-10.)  Plaintiffs contend that Defendants could argue "a lack of such evidence

shows that the parties did not share a relationship in an effort … to reduce damages that may be

awarded by a jury." (*Id.* at 10.)

Significantly, though pictures may be relevant to damages, pre-incident photographs "run[] the

risk of eliciting the sympathy of the jury and not accurately representing the decedent on the day of the

incident at issue in this action." *See Crawford v. City of Bakersfield*, 2016 WL 5870209 at *7 (E.D.

Cal. Oct. 6, 2016); *see also Estate of Jaquez v. Flores*, 2016 WL 1060841 at *12 (S.D.N.Y. Mar. 17,

2016) (granting a motion in limine to preclude pre-incident photos of the decedent—which included

the decedent with his family—for non-damages reasons, as the photographs were "not relevant to any issue" and "clearly serve[d] to elicit sympathy from the jury").  Thus, this Court declined to admit such photos "prior to the jury making a determination regarding liability."  *Crawford*, 2016 WL 5870209 at *7.

Moreover, though Plaintiffs suggest that Defendants only seek exclusion of pre-incident "photographs on the basis that they are prejudicial, Plaintiffs ignore their own failure to identify such photos as exhibits in the parties' Joint Pretrial Statement.  (*See* Doc. 119 at 9-10.)  As Defendants observe, Plaintiffs identified the following documents as exhibits: "(1) photographs of scene and apartment complex; (2) photographs of Officer Patino in uniform on date of incident; (3) incident reconstruction photographs; (4) investigative reports; (5) medical records; and (6) [the] Coroner's Report/Autopsy Report."  (Doc. 102 at 24; *see also* Doc. 95 at 39, Doc. 99 at 19.)  Clearly, Plaintiffs did not mention identify any pre-incident photographs of Decedent—or of Plaintiffs with their son—as exhibits in the matter.  The Court indicated in the Pretrial Order: "NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE"."  (Doc. 99 at 18, emphasis in original.)  The parties were also granted fourteen days within the date of service to file any written objections to the Court's order.  (*Id.* at 25.)  No objections were filed, and no additional exhibits were identified by either party.  Because Plaintiffs did not list pre-incident photographs as exhibits and have not made the requisite showing that pre-incident photos must be admitted to prevent "manifest injustice," the photographs—which remain unidentified by Plaintiffs— will not be admitted into evidence and the motion is **GRANTED**.

### B.      Post-death photographs

Defendants anticipate Plaintiffs will seek to introduce photos of Decedent "taken at the scene, at the hospital and/or during his autopsy."  (Doc. 102 at 25.)  Although Defendants acknowledge the photos may be relevant, they assert the evidence may be excluded as prejudicial.  (*Id.*)  According to Defendants, "[c]ourts routinely exclude graphic photographs as being more prejudicial than probative."  (*Id.*, citing *Chrysler v. City of W. Covina*, 1998 U.S. App. LEXIS 30993, at *6 (9th Cir. 1998); *Jetton by & Through McKinley v. City of Downey*, 1996 U.S. App. LEXIS 12251, at *5 (9th

1   Cir. 1996); *Destacamento Gonzalez v. City of Garden Grove*, 2006 U.S. Dist. LEXIS 97148 (C.D. Cal.

2   Dec. 4, 2006); *Fernandez v. Leonard*, 963 F.2d 459, 464 (1st Cir. 1992).)  Defendants also note

3   Plaintiffs did not identify an exert to "explain[] the significance of these photographs in the context of

4   this lawsuit."  (*Id.*, citing *e.g.*, *Dudley v. Bexar Cty.*, 2014 U.S. Dist. LEXIS 169913 at *11 (W.D. TX

5   Dec. 9, 2014); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).  For example, Defendants note

6   that in *Dudley*, the court determined "photographs depicting bullet holes and shell casings to be of

7   'limited probative value' because the plaintiff did not present any expert testimony interpreting the

8   photographs."  (*Id.*, citing *Dudley*, 2014 U.S. Dist. LEXIS 169913 at *11.  In addition, Defendants

9   observe that Dr. Robert Witmore, the coroner, testified the autopsy photographs could not be relied

10  upon for "an accurate depiction of the directionality of the bullets."  *Id.* (citing Whitmore Depo. 57:13-

11  58:2, 85:8-87:8 [Doc. 102 at 121-126].)

12          Plaintiffs argue post-death "images are highly relevant to show the entry areas where Mr.

13  Okamoto was shot."  (Doc. 119 at 9.)  Plaintiffs contend that "[c]ourts have permitted all sorts of

14  images and videos that could be objectionable to the average person, but have still determined that

15  they are neither unfair nor prejudicial."  (*Id.*)  For example, Plaintiffs note the Ninth Circuit

16  determined the "admission of photographs exposing [a] victim's genital area and lower body where

17  there were no wounds did not render the trial fundamentally unfair."  (*Id.*, citing *Batchelor v. Cupp*,

18  693 F.2d 859, 865 (9th Cir. 1992), *cert. denied*, 463 U.S. 1212 (1983).)

19          Although the cause of death is not in issue, there is no dispute the photographs are relevant.

20  (*See* Doc. 102 at 25.)  On the other hand, such photographic evidence "may appeal to the jury's

21  sympathies, arouse jurors' sense of horror, provoke a jury's instinct to punish, and trigger other intense

22  human reactions."  *See Silva v. Chung*, 2019 WL 2195203, at *3 (D. Haw. May 21, 2019); Weinstein's

23  Federal Evidence § 403.04[1][c]; *see also Sanchez v. Jiles*, 2012 WL 13005996, *5 (C.D. Cal. June 14,

24  2012) (explaining that with autopsy photos, "[t]here is a strong possibility that such photographs will

25  inflame the jury's sympathies and distract them from the relevant issues in dispute," and excluding

26  cumulative and inflammatory photos).  Nevertheless, the Court notes Plaintiffs have not clearly

27  identified which photographs—whether all autopsy photos or only a few—which they may seek to be

28  admitted as evidence.  Because the specific photographs were not identified, the Court finds it would be

1    more able to balance the issues of relevance and prejudice during the presentation of related testimony

2    at trial.  Accordingly, until such time as Plaintiffs seek to introduce such evidence to the jury, the Court

3    **RESERVES** ruling on the motion, to the extent it relates to the post-death photographs. Before any

4    party seeks to introduce post-death photos, the offering party **SHALL** address the issue with the Court

5    outside the presence of the jury.

6    **XII.    Defendants' Motion in Limine No. 9 (Doc. 102 at 26)- Inflammatory terms**

7           Defendants request the Court preclude Plaintiffs, counsel, and any witnesses from using

8    "inflammatory terms," including: "(1) reference to the Bakersfield Police Department or its officers as

9    the 'Deadliest Police Force in America'; (2) reference to Defendant Alejandro Patino as a 'killer',

10   'murderer', or "'shooter'; and  (3) reference to the Decedent as the 'victim'." (Doc. 102 at 26.)

11   Defendants assert these terms are misleading, inflammatory, and "designed to incense a jury and to

12   evoke sympathy for Plaintiffs and antipathy toward Defendant Patino." (*Id.*, citing *Estate of Zahn v.*

13   *City of Kent*, 2016 U.S. Dist. LEXIS 17941, at *14-15, 2016 WL 541397 (W.D. Wash. Feb. 11, 2016).)

14   Therefore, Defendants argue the terms "should be excluded under Fed. R. Evid. 403." (*Id.*)

15          Plaintiffs oppose the motion, asserting it "lacks foundation because it is vague, ambiguous, and

16   overbroad." (Doc. 113 at 4.)  Plaintiffs contend "[i]t is unclear what Defendants mean by the terms

17   listed above and Defendant has not placed Plaintiffs on notice as to what relief [Defendants are]

18   seeking." (*Id.*)  Plaintiffs also argue that "referring to decedent as the 'victim' is not improper,

19   irrelevant nor highly prejudicial." (*Id.*)  In addition, Plaintiffs contend "the restrictions by Defendants

20   would adversely impact witness questions and jury communications that are clearly permissible." (*Id.*)

21          Notably, the bases for several of Plaintiffs' objections are unclear.  For example, there is no

22   foundation to be laid for this motion, such that an objection for "lack of foundation" is appropriate.

23   The motion is also narrowly tailored to address the use of specific terms, and is not "vague, ambiguous

24   or overbroad" in identifying the words and phrases Defendants seek be prevent the use of during the

25   trial.  Toward that end, Defendants clearly set forth the relief sought with this motion.

26          Referring to the police department that employs Officer Patino as "the Deadliest Police Force in

27   America" could clearly inflame the jury against the defendant.  Likewise, references to a decedent as a

28   "victim" and a defendant as "killer," "murderer," or "shooter" are argumentative and may cause

prejudice.  *See, e.g., Crawford v. City of Bakersfield*, 2016 WL 5870209, at *8 (E.D. Cal. Oct. 6, 2016) (finding "use of the terms shooter, killer, and victim" was "inflammatory terminology"); *Estate of Zahn*, 2016 WL 541397 at *4 (finding that "[t]he labels 'shooter' and 'victim' are unnecessarily argumentative" and the plaintiffs could "easily refer" to the officer and decedent by name); *United States v. Sena*, 2021 WL 4129247, at *2 (D.N.M. Sept. 9, 2021) (finding repeated use of the word "victim" could cause prejudice, and noting that excluding the word did not prevent a party from describing injuries or presenting evidence in a criminal trial).  For example, in *Crawford*, the plaintiffs sought to hold an officer liable for the use of excessive force and wrongful death.  *See id.*, 2016 WL 5870209, at *1.  The plaintiffs argued that "there is nothing inflammatory about the use of the terms shooter and victim," and the Court disagreed because the terms could "inflame the passions of the jury."  *Id.* at *8.  Consequently, the Court granted a motion in limine to exclude use of the words "shooter, killer, and victim."  *Id.*

Similar to *Crawford*, the plaintiffs seek to hold Officer Patino liable for excessive force and claims related to the wrongful death of Christopher Okamoto.  Identifying the defendant as "killer," "murderer," or "shooter"—and the decedent as a "victim"— may invoke negative connotations and inflame the jury against Defendant and engender sympathy for Plaintiffs, resulting in prejudice. Plaintiffs would not be adversely restrained in referring to Christopher Okamoto and Officer Patino only by their names, or decedent and defendant.  Therefore, the motion to exclude use of the identified inflammatory terms is **GRANTED**.

### XIII.   Defendants' Motion in Limine No. 10 (Doc. 102 at 27)- Reference or evidence of the Stipulated Judgment and ACLU Report

Defendants seek to exclude reference to "the Stipulated Judgment between the City of Bakersfield and the Department of Justice or the subsequent report from the ACLU that was issued." (Doc. 102 at 27.)  Defendants note that Plaintiffs did not identify either the Stipulated Judgment or the ACLU Report as exhibits, but report "Plaintiffs would not stipulate to this Motion."  (*Id.*)  Plaintiffs contend this "motion should be denied because it is premature."  (Doc. 114 at 4.)  According to Plaintiffs, the Court "cannot determine whether or not the stipulated judgment or the subsequent 'Report' from the ACLU [are relevant and admissible] until the context of trial."  (*Id.*)

Significantly, Plaintiffs do not acknowledge they did not identify either the Stipulated Judgment or ACLU Report as exhibits in the Joint Pretrial Report.  As discussed above, the Court indicated in the Pretrial Order: "NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE"."  (Doc. 99 at 18, emphasis in original.)  The Court **RESERVES** ruling upon this motion, until Plaintiffs carry the burden to show exclusion would cause "manifest injustice."  The Court **SHALL** be alerted, outside the presence of the jury, of any planned presentation of either the Stipulated Judgement or the ACLU Report.[5]

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Defendant's motion to bifurcate the trial (Doc. 103) is **GRANTED,** with the first phase for liability and compensatory damages, and the second phase for punitive damages.

2. Plaintiffs' motion in limine number 1 (Doc. 104) is **RESERVED**.

3. Defendants' motion in limine number 1 (Doc. 102 at 10) is **GRANTED**.

4. Defendants' motion in limine number 2 (Doc. 102 at 11) is **RESERVED**.

5. Defendants' motion in limine number 3 (Doc. 102 at 12) is **GRANTED**.

6. Defendants' motion in limine number 4 (Doc. 102 at 14) is **GRANTED**.

7. Defendants' motion in limine number 5 (Doc. 102 at 19) is **GRANTED in PART** as stated above.

8. Defendants' motion in limine number 6 (Doc. 102 at 20) is **GRANTED**.

9. Defendants' motion in limine number 7 (Doc. 102 at 23) is **GRANTED**.

10. Defendants' motion in limine number 8 (Doc. 102 at 24) is **GRANTED in PART** and **RESERVED in part**.

11. Defendants' motion in limine number 9 (Doc. 102 at 26) is **GRANTED**.

---

[5] Notably, the parties also stipulated that "[n]o evidence or argument to other police incidents or lawsuits (both with the Bakersfield Police Department and involving other non-party police departments) or officers shall be introduced."  (Doc. 101 at 2, ¶ 3.)  Pursuant to the terms of the stipulation, a party "shall ask for a sidebar or conference with the court prior to presenting such evidence."  (*Id.* at 2.) As to anticipated evidentiary disputes, however, counsel SHALL NOT seek a sidebar but should, instead, raise the issue outside the presence of the jury.

12. Defendants' motion in limine number 10 (Doc. 102 at 27) is **RESERVED**.

IT IS SO ORDERED.

   Dated:   **August 12, 2022**                                     _____
                                                                      UNITED STATES DISTRICT JUDGE