**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAMETRIA NASH-PERRY, | Case No.: 1:18-cv-01512 JLT CDB |
| Plaintiff, | ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION TO MODIFY THE PRETRIAL ORDER AND ALLOW ADDITIONAL EXHIBITS |
| v. | |
| CITY OF BAKERSFIELD, et al, | (Doc. 129) |
| Defendants. | |
| JASON OKAMOTO, et al., | |
| Plaintiffs, | |
| v. | |
| CITY OF BAKERSFIELD et al., | |
| Defendants. | |

Tametria Nash-Perry and Jason Okamoto seek to hold Bakersfield Police Officer Alejandro Patino and the City of Bakersfield liable for the fatal shooting of Christopher Okamoto under federal and state law. (*See generally* Docs. 38, 44.) Plaintiffs now have filed an exparte application to modify

1

the Court's Pretrial Order to allow additional exhibits at trial.[1] (Doc. 129.) For the reasons set forth below, the Court finds Plaintiffs fail to meet their burden to show manifest injustice would result if the exhibits were not added, and the motion to amend the Pretrial Order is **DENIED**.

## I. Relevant Background and Procedural History

Tametria Nash-Perry and Jason Okamoto are the parents of Christopher Okamoto, and assert the defendants are liable for the wrongful death of their son. On October 31, 2018, Ms. Nash-Perry initiated this action by filing a complaint asserting constitutional claims on her own behalf and constitutional, state law, and survivorship claims on behalf of the decedent. (Doc. 1.) Mr. Okamoto also filed a complaint, stating claims on his own behalf and as the decedent's successor-in-interest, on August 14, 2019. (*See* Doc. 1, Case No. 1:19-cv-1125-LJO-JLT.) The Court consolidated the actions on November 8, 2019. (Doc. 42.) The matter is now set for trial on January 9, 2023. (*See* Doc. 124.)

Heather Cohen, counsel for Defendants, reports that in anticipation of the original trial date of January 9, 2022, the parties communicated concerning the Joint Pretrial Statement in October 2021. (Doc. 132-1 at 2, Cohen Decl. ¶ 2.) According to Ms. Cohen, Darryl Meigs emailed her office and indicated Plaintiffs' counsel was "in the process of finalizing our witness and exhibit lists" and could "circulate a draft of the joint lists by this evening if that works…" on October 18, 2021. (*Id.*) Ms. Cohen emailed a draft of the parties' joint pretrial statement to Mr. Meigs and Rodney Diggs on October 21, 2021. (*Id.*; *see also id.* at 7.) In an email on October 26, 2021—which was copied to Mr. Diggs and James Bryant—Mr. Meigs informed Defendants that they were "populating [Plaintiffs'] sections of the Joint Pre-Trial Statement." (*Id.* at 2, Cohen Decl. ¶ 2; *see also* Doc. 132-1 at 11.) After Ms. Cohen followed up regarding the status on November 1, Mr. Bryant responded that he was "actually the one preparing it" and hoped to provide a draft to her "by early afternoon." (*Id.* at 2, Cohen Decl. ¶ 3; *see also* Doc. 132-1 at 15-16.) However, that same afternoon, the parties received an email from the Court indicating it was unlikely the trial would be conducted as scheduled (*see* Doc. 132-1 at 19), and evidently the parties ceased their discussions concerning the Joint Pretrial Statement.

---

[1] The application is so devoid of the showing required to allow for it to be granted, the Court is concerned that the motivation for doing so was to waste the time of opposing counsel. It clearly was a waste of the Court's limited time and resources.

2

On May 16, 2022, Ms. Cohen emailed Plaintiffs' counsel—including both Mr. Meigs and Mr. Diggs on the email— and requested Plaintiffs' portion of the document be provided no later than May 23. (Doc. 132 at 4; *see also* Doc. 132-1 at 22; Doc. 129 at 6.) According to Plaintiffs' counsel, "[a]round that time, Mr. Diggs was preparing for trial, *Michael Ross v. Bassett Unified School District, et al.*, along with co-counsel James Bryant." (Doc. 129 at 6.) Plaintiffs' counsel reports that "[d]ue to this trial, Mr. Diggs assigned associate Darryl Meigs[] to meet and confer with Ms. Cohen, which they did." (*Id.*, footnote omitted.)

According to Mr. Diggs, Mr. Meigs showed him "the working PTCO" on May 27, 2022. (Doc. 129 at 7; *see also id.* at 18, Diggs Decl. ¶ 6.) Mr. Diggs reports that he "informed Mr. Meigs to make changes to the PTCO such as changes to the disputed factual issues, motions *in limine* and Plaintiffs (sic) exhibits." (*Id.* at 18, Diggs Decl. ¶ 7.)

Mr. Bryant reports that "[s]ometime on or about May 27, 2022, while preparing for trial with Mr. Diggs, he provided me to me for my review a hardcopy of a draft of the PTCO that had been prepared by Mr. Diggs and his associate Daryl (sic) Meigs." (Doc. 129 at 23, Bryant Decl. ¶ 3.) After Ms. Cohen inquired whether approval was needed from Mr. Bryant's office, he responded: "We approve once Ivie approves." (Doc. 132-1 at 77; *see also* Doc. 129 at 23, Bryant Decl. ¶ 4.) According to Mr. Bryant, "Having just reviewed a draft of the PTCO, and with Mr. Meigs having also submitted approval of the document, I too approved the PTCO that was filed by Ms. Cohen that evening." (Doc. 129 at 23, Bryant Decl. ¶ 4.) Similarly, Mr. Meigs informed Ms. Cohen, "Yes you have our authority to file." (Doc. 132-1 at 80.) Defendants filed the Joint Pretrial Statement on May 27, 2022, which included the digital signatures of Mr. Meigs and Mr. Bryant on behalf of Plaintiffs. (Doc. 95 at 43.)

The Court held its pretrial conference with the parties on June 3, 2022, at which James Bryant and Rodney Diggs appeared on behalf of Plaintiffs.[2] (Doc. 98.) During the conference, the Court

---

[2] Curiously, in the instant motion Plaintiffs assert that "Mr. Diggs and Mr. Bryant were not present at the pretrial conference." (Doc. 129 at 6.) However, the Court's records show both were present during the conference on June 3, 2022. (Doc. 98.)

At the time of the pre-trial conference, Mr. Meigs was not admitted to practice before the Eastern District. (*See* Doc. 96.) Thus, the Court had ordered Mr. Meigs to show cause why sanctions should not be imposed for his failure to seek admission prior to practicing law in the Court by signing the Joint Pretrial Statement. (*Id.*) At the conference, Mr. Diggs indicated it should have been his digital signature on the document, rather than that of Mr. Meigs. Similarly, following the conference, Mr. Diggs filed a declaration from Mr. Meigs, in which Mr. Meigs reported that he "mistakenly caused [his]

3

discussed the obligation of the parties to meet and confer concerning exhibits— and to provide anticipated trial exhibits to the opposing party—for examination prior filing the motions in limine. The Court issued its Pretrial Order setting forth applicable deadlines on June 6, 2022.  (Doc. 99.)  In the Pretrial Order, the Court incorporated all exhibits identified by the parties in their joint statement, which included the following exhibits for Plaintiffs:

1. Photographs of Scene and Apartment Complex
2. Photographs of Officer Patino in uniform on date of incident
3. Incident Reconstruction Photographs
4. Investigative Reports
5. Medical Records
6. Coroner's Report/Autopsy Report

(*Id.* at 19.)  The Court informed the parties: "NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE PREVENTED TO PREVENT 'MANIFEST INJUSTICE.'"  (*Id.* at 18, citing Fed. R. Civ. P. 16(e), Local Rule 281(b)(11) [emphasis in original].) The parties were instructed to "meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examine each other's exhibits" no later than June 27, 2022.  (*Id.* at 20.) The Court granted the parties 14 days to "file and serve written objections to any of the provisions set forth in [the] order."  (*Id.* at 25.)  No objections were filed by either side.

On June 14, 2022, Ms. Cohen "emailed Plaintiffs' Counsel asking about their availability to meet and confer regarding motions in limine and exhibits."  (Doc. 132 at 5; *see also* Doc. 132-1 at 82-83.)  During the parties' subsequent communications, Ms. Cohen emailed Mr. Diggs—and copied Mr. Bryant and Mr. Meigs—"the Defendants' position as to the Plaintiffs' anticipated Motions in Limine, and a link to the trial exhibits the Defendants intended to use."  (*Id.* at 5; *see also* Doc. 132-1 at 86-87.) Defendants report that Plaintiffs did not provide their trial exhibits, despite the Court's Pretrial Order to do so no later than June 27.  (*Id.*)

Both parties filed motions in limine on July 1, 2022.  (Docs. 102, 104.)  Defendants' Motion in

---

name to appear on the signature block, when it should have been that of Supervising Attorney Rodney Diggs, who oversaw and approved the contents of Plaintiff's (sic) portions of the Joint Pretrial Statement and is licensed to practice before this Court." (Doc. 97 at 2, Meigs Decl. ¶ 5.)

4

Limine No. 8 sought exclusion of "photographs or videos of Decedent." (Doc. 102 at 24, emphasis omitted.) Plaintiffs filed their opposition, which was signed by Mr. Bryant, on July 12, 2022. (Doc. 119; *see also id.* at 9-10 [addressing the motion concerning pre-incident and post-death photographs].) On August 15, 2022, the Court issued its Order on Motions in Limine. (Doc. 126.) In ruling on Motion No. 8, the Court discussed the exhibits identified by Plaintiffs in the Joint Pretrial Statement and observed: "Plaintiffs did not mention identify any pre-incident photographs of Decedent—or of Plaintiffs with their son—as exhibits in the matter." (*Id.* at 29.) The Court granted the motion to exclude pre-incident photographs "[b]ecause Plaintiffs did not list pre-incident photographs as exhibits and have not made the requisite showing that pre- incident photos must be admitted to prevent 'manifest injustice'…." (*Id.*)

On November 16, 2022, Ms. Cohen emailed Plaintiffs' counsel "and requested that they provide their exhibits." (Doc. 132 at 6; *see also* Doc. 132-1 at 90.) Ms. Cohen was informed Mr. Diggs was out of the office, but they would "forward Plaintiff's exhibits on or before Tuesday [November 21]." (Doc. 132-1 at 89; *see also* Doc. 132 at 5.) However, the exhibits were not provided by the anticipated date. (*See* Doc. 132 at 6; *see also* Doc. 132-1 at 4, Cohen Decl. ¶¶ 13-15.) Ms. Cohen again followed up regarding the status of exhibits on December 6, 2022. (Doc. 129 at 8; *see also* Doc. 132-1 at 93.)

On December 19, 2022, Plaintiffs submitted their anticipated trial exhibits to Ms. Cohen. (Doc. 129 at 21, Diggs Decl. ¶ 25; Doc. 132-1 at 4, Cohen Decl. ¶ 15.) The exhibits provided were labeled:

1. OIS Investigative Reports
2. Major Incident Log by Joshua Patty
3. KRCL Report
4. Kern County Sheriff Coroner- Final Report
5. CAD CAII Hardcopy
6. Reenactment of Scene Photos
7. Photos of Defendant Officers
8. Outside Scene Photos
9. Defendant Officers' guns and cartridges
10. Inside Scene Photos
11. Brittany Saucedo Blueroom
12. Edward White Blueroom Interview
13. I8O51429- Patino Statement
14. 18R51474- Patino Statement
15. Police Policies
16. Police Training
17. Autopsy photos
18. Defs Resp to Pltf RFA Set 1

(*See* Doc. 132-1 at 96; *see also* Doc. 132 at 6-7.)  Ms. Cohen responded to the email the same day, indicating "the exhibits produced exceed[ed] what was listed in the PTCO."  (Doc. 129 at 21, Diggs Decl. ¶ 26.)  Mr. Digg asserts that he "did not receive Ms. Cohen's e-mail until December 27, 2022."  (*Id.*, Diggs Decl. ¶ 27.)

According to Mr. Diggs, upon notification of the differences between the Pretrial Order and the provided exhibits, he "reviewed Docket 95 and saw the incorrect version of the PTCO and that it omitted the above-mentioned exhibits."  (Doc. 129 at 21, Diggs Decl. ¶ 21.)  Mr. Diggs asserts he "immediately informed Ms. Cohen of this inadvertence and asked that she meet and confer." (*Id.*, ¶ 22.)  Counsel did not reach agreement regarding the exhibits.  (*Id.*, ¶ 23.)

Plaintiffs filed the *ex parte* motion now pending before the Court on December 28, 2022, seeking leave to amend the Pretrial Order under Rule 16 and Rule 60 of the Federal Rules of Civil Procedure.  (Doc. 129.)  Defendants filed their opposition on December 29, 2022.  (Doc. 132.)  The matter is currently set for trial beginning January 9, 2023.  (*See* Doc. 124.)

## II.     Amendment of a Pretrial Order

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, "The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. P. 16(e).  An order issued after this conference "controls the course of the action unless the Court modifies it."  Fed. R. Civ. P. 16(d). The pretrial order plays a "crucial rule … in 'implementing the purposes of the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action.'"  *Sousa v. Unilab Corp. II (Non-exempt) Mbrs. Group Benefit Plan*, 252 F.Supp.2d 1046, 1058 (E.D. Cal. 2002) (quoting *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir.1981)).  Thus, in order "to prevent unfair surprise and encourage timely and orderly litigation," parties may not "offer evidence or advance theories at trial which are not included in the order or which contradict its terms."  *Sousa,* 252 F.Supp.2d at 1058 (quoting *First Nat'l Bank of Circle*, 652 F.2d at 886).

Significantly, "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  Under this "manifest injustice" standard, a pretrial order "is not an inexorable decree and may, under proper circumstances, be modified."  *Jeffries v.*

*United States*, 477 F.2d 52, 55 (9th Cir. 1973). Nevertheless, "manifest injustice" is a high standard, and requires more than good cause for amendment. *See United States ex rel. Concilio De Salud Integral De Loíza, Inc. v. J.C. Remodeling, Inc..*, 962 F.3d 34, 41 (5th Cir. 2020) (manifest injustice "is a higher standard than is otherwise imposed"); *Paramount Farms, Inc. v. Ventilex B.V.*, 2010 WL 3943599, n.3 (E.D. Cal. Oct. 4, 2010) (observing the standard to amend a pretrial order is under Rule 16(e) is "more stringent").

To evaluate a request for leave to amend a pretrial order, the Ninth Circuit instructs courts to consider "(1) the degree of prejudice or surprise to the [non-movant] if the order is modified; (2) the ability of the [non-movant] to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the [movant]." *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005). The Court may consider the diligence of the moving party. See WLD Investors, Inc. v. Xecom Corp., 35 Fed. App'x 609, 612 (9th Cir. 2002) (acknowledging "adverse consequences" to the moving party, but finding their "extreme lack of diligence" did not establish manifest injustice).

The burden is on the moving party to show the requested amendment is necessary to prevent manifest injustice. *Galdamez*, 415 F.3d at 1020; *see also Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir. 1998) ("It is the moving party's burden to show that a review of these factors warrants a conclusion that manifest injustice would result if the pretrial order is not modified") *superseded on other grounds*.

### III.     Motions under Rule 60

Plaintiffs also seek relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure. (Doc. 129 at 11-12.) Rule 60(b) authorizes courts to relieve parties from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect…". Fed R. Civ. P. 60(b)(1). Motions for relief pursuant to Rule 60(b) are addressed to the sound discretion of the Court. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

With respect to "mistake" under Rule 60(b)(1), a party "may seek relief from an excusable mistake on the part of a party or counsel, or if the district court has made a substantive error of law or fact in its judgment or order." *Bretana v. International Collection Corp.*, 2010 WL 1221925, at *1 (N.D. Cal. 2010) (citing *Utah ex. Rel. Div. of Forestry v. United States*, 528 F.3d 712, 722-23 (10th

Cir. 2008)). In general, "an inadvertent mistake involves a misunderstanding of the surrounding facts and circumstances." *Melo v. Zumper, Inc.*, 2020 WL 1891796, at*3 (N.D. Cal. Apr. 16, 2020) (citing *Eskridge v. Cook Cty*., 577 F.3d 806, 809 (7th Cir. 2009)).

Whether a party's neglect is "excusable" under Rule 60(b)(1) is an equitable determination that "tak[es] account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). These circumstances include: "the danger of prejudice to the [opposing party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

## IV. Discussion and Analysis

Plaintiffs seek amendment of the Pretrial Order to identify the following as their trial exhibits:

1. Photographs of Scene and Apartment Complex
2. Photographs of Officer Patino in uniform on date of incident
3. Incident Reconstruction Photographs
4. Investigative Reports
5. Medical Records
6. Coroner's Report/Autopsy Report
7. Officer Patino's training records
8. Bakersfield Police Department Policies and Procedures
   a. Policy 300 – Use of Force
   b. Policy 302 – Deadly Force Review
   c. Policy309 – Conducted Electrical Weapon
   d. Policy 310 – Officer-Involved Shootings
9. Learning Domains
   a. LD 20 – Use of Force
   b. LD 33 – Arrest and Control
10. Academy Use of Force Power Point
11. Training Bulletin
    a. Escalation & De-escalation of Force
    b. Use of Force Considerations
12. Photos from Brittney Saucedo Phone with Christopher Okamoto
13. Officer Patino's Recorded Statements
14. Officer Celedon's Recorded Statements
15. Brittney Saucedo Annual Mental Health Reassessment
16. Dick Bryce Expert Report
17. Curtis Cope Expert Report
18. Okamoto and Nash-Perry Family Photos
19. Video clips of Christopher Okamoto

(Doc. 129 at 7, 15-17.) Numbers 1 through 6 were identified in the Pretrial Order. (Doc. 99 at 19.) Thus, Plaintiffs now seek leave to add 13 exhibits, identified as Items 7-19 above.

Defendants oppose the request, arguing that Plaintiffs have "not met the high burden of showing

manifest injustice" and did not act diligently in seeking amendment of the Pretrial Order. (Doc. 132 at 10, emphasis omitted.) In addition, Defendants observe there are discrepancies between the exhibits identified in Plaintiffs' motion and the exhibits produced on December 19, 2022, which did not include: "(1) Learning Domains; (2) Britney Saucedo's Annual Mental Health Reassessment; (3) Dick Bryce Expert Report; (4) Curtis Cope Report; (5) Video Clips of Christopher Okamoto; (6) Photos from Brittney Saucedo's Phone with Christopher Okamoto; and (7) Medical Records." (Doc. 132-4, Cohen Decl. ¶ 15; *compare* Doc. 129 at 7 *with* Doc. 132-1 at 96.) Thus, Defendants contend that "Plaintiffs' counsel has apparently not provided an accurate set of trial exhibits." (*Id.*)

### A. Manifest Injustice

Plaintiffs argue, "Without an amendment to the pretrial conference order, Plaintiffs will suffer manifest injustice in that they will be prevented from proceeding on their claims and also to provide liability and damages suffered as a result of their son being killed by Defendants." (Doc. 129 at 10.) In addition, Plaintiffs contend "manifest injustice will result if the pretrial order is not amended" for the following reasons:

> Plaintiff may be excluded from presenting evidence of the defendants police practices and policies, training and recorded statements if the above-mentioned exhibits are not included in the pretrial order; if Defendants witnesses testify at trial inconsistent with his deposition testimony or prior recorded statement, Plaintiff will be manifestly prejudiced if they are unable to present evidence that contradicts prior or subsequent statements or statements that vastly differ from other offices or that sway from their training and City of Bakersfield's policies and practices.

(Doc. 129 at 12.) Furthermore, Plaintiffs contend the "[e]xclusion of the exhibits would certainly be manifest injustice, as Plaintiffs would not be able to show decedent and Plaintiffs prior to decedent's tragic death, City of Bakersfield's trainings, policies and practices, along with statements by Defendants officers and other witnesses." (*Id.* at 13.)

Plaintiffs maintain they "will suffer extreme prejudice if not allowed to present the exhibits identified above." (Doc. 129 at 12.) On the other hand, they argue Defendants "will not be prejudiced if the Court grants Plaintiffs' motion to amend the pretrial order" because they have "been aware of all the exhibits for over three (3) years; Defendant has always known that Plaintiff has contended that the parents' claims are for loss of love, relationship, etc.; and the City of Bakersfield's training, policies

and practices are important to this case, as both of the parties' expert witness testified about its compliance or lack to comply during the experts' respective depositions." (*Id.* at 13.) Plaintiffs conclude "modification will not change the impact the orderly conduct of the case and/or trial and therefore should be allowed." (*Id.* at 15.)

Defendants argue "nothing contained in the Plaintiffs' Motion rise[s] to the level of finding 'manifest injustice.'" (Doc. 132 at 11.) Defendants contend the factors identified by the Ninth Circuit "weigh against allowing Plaintiffs to use the subject exhibits." (*Id.* at 10, emphasis omitted.) Defendants observe they have been preparing both their lay and expert witnesses "based on the universe of evidence that was identified." (*Id.* at 11.) Defendants assert "it would be completely unfair and prejudicial to allow these exhibits into evidence and to start the trial in a little over a week." (*Id.*) Further, Defendants contend amendment "would result in a waste of time and resources," because "[s]ome of the exhibits identified by Plaintiffs (Bakersfield Police Department Polices, Learning Domains, Academy Use of Force Power Point, and the Training Bulletin, Expert Reports) are inadmissible on their face…." (*Id.* at 12.) Defendants assert they also have never received "the 'Brittney Saucedo Annual Mental Health Reassessment' and the 'Photos from Brittney Saucedo Phone with Christopher Okamoto." (*Id.*) Thus, Defendants contend motions in limine challenging admissibility and the unproduced documents would be necessary. (*Id.*) Defendants also observe that exhibits now identified "violate[] the existing Motion in Limine Order." (*Id.*) Finally, Defendants contend the degree of willfulness or bad faith supports the denial of amendment, asserting: "given the significant delay in raising the issue, the proximity of the trial combined with the fact that even now, Plaintiffs have not produced the actually exhibits they want to use- it is difficult to reach any other conclusion." (*Id.*)

### 1. Descriptions of exhibits

Plaintiffs did not provide copies to the Court of the exhibits they seek to add to the Pretrial Order. Thus, the Court relies upon the descriptions provided by Plaintiffs related to the contents and relevance of the exhibits. Plaintiffs report that "Items 7-11 make reference to the Bakersfield Police Departments own policies, procedures and manuals that were provided to Plaintiffs by Defendants." (Doc. 129 at 10.) Plaintiffs describe Items 12, 18, and 19 as images "of Decedent with his mom, dad

and siblings," which "go[] to the relationship they had with each other." (*Id.*) Plaintiffs indicate that "Items 13 and 14 are recorded statements by Defendant Officer Patino and Officer Celedon, both who are identified as witnesses in Plaintiff's case-in-chief." (*Id.* at 11.) Finally, Items 16 and 17 are the expert reports, which were produced "during expert disclosures…." (*Id.*)

### 2. Photos and video clips of Decedent (Items 12, 18, and 19)

In the "Order on Motions in Limine and Motion to Bifurcate the Trial" the Court addressed Defendants' motion to exclude "any pre-incident photos of Mr. Okamoto." (Doc. 126 at 28-29.) The Court observed: "though pictures may be relevant to damages, pre-incident photographs 'run[] the risk of eliciting the sympathy of the jury and not accurately representing the decedent on the day of the incident at issue in this action.'" (*Id.* at 28, quoting *Crawford v. City of Bakersfield*, 2016 WL 5870209 at *7 (E.D. Cal. Oct. 6, 2016).) In addition, the Court noted Plaintiffs had not identified "pre-incident photographs as exhibits [in the Joint Pretrial Statement]" and found Plaintiffs did not make "the requisite showing that pre- incident photos must be admitted to prevent 'manifest injustice.'" (*Id.* at 29.) Therefore, the Court granted the motion to exclude such pre-incident photographs. (*Id.*)

Again, the Court finds Plaintiffs have not demonstrated "manifest injustice" would result from the preclusion of photographs or videos of Decedent with his parents or photos from Ms. Saucedo's phone. Such images depict only moments in time, and are "not relevant to any issue" related to liability. *See Estate of Jaquez v. Flores,* 2016 WL 1060841 at *12 (S.D.N.Y. Mar. 17, 2016) (granting a motion in limine to preclude pre-incident photos of the decedent—which included the decedent with his family—for non-damages reasons, as the photographs were "not relevant to any issue" and "clearly serve[d] to elicit sympathy from the jury"). Plaintiffs may introduce evidence concerning their relationship with their son—to the extent relevant to the issues of damages—through testimony. Given the repeated failure of Plaintiffs to demonstrate manifest injustice, the Court declines to disturb its prior order granting Motion in Limine No. 8.

### 3. Expert reports (Items 16 and 17)

Plaintiffs seek amendment to add the expert reports of Dick Bryce and Curtis Cope. Plaintiffs assert there is no surprise to Defendants regarding these reports, because they "were turned over during expert disclosures and both experts' depositions have been taken" (Doc. 129 at 11.)

Importantly, Plaintiffs fail to demonstrate that the reports are admissible. Genarlly, expert reports are generally inadmissible as hearsay, and Plaintiffs have failed to make any effort to demonstrate how they could be admitted. *See, e.g., Hunt v. City of Portland*, 599 Fed. App'x 620, 621 (9th Cir. 2013) (finding the expert's written report was "hearsay to which no hearsay exception applie[d]"); *see also Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) (holding a written expert report may not be used to establish "general proof of the truth of the underlying matter" under Federal Rule of Evidence 802); *Seal4Safti, Inc. v. Cal. Expanded Metal Prods. Co.*, 2022 WL 16710721 at *2 (C.D. Cal. Oct. 3, 2022) (identifying an expert's written report as "inadmissible hearsay"); *Alexie v. United States*, 2009 WL 160354, at *1 (D. Alaska Jan. 21, 2009) ("Application of the hearsay rule to exclude both parties' expert reports is quite straightforward. The reports are out-of-court statements by witnesses offered for their truth and so fall within the definition of hearsay….").

Because Plaintiffs have failed to demonstrate that these reports are admissible, they have also failed to demonstrate manifest injustice results from the exclusion of the written expert reports of Dick Bryce and Curtis Cope.[3]

### 4. Ms. Saucedo's annual mental health reassessment

Although Plaintiffs identify the mental health assessment of Ms. Saucedo as an exhibit in the motion to amend the Pretrial Order, Plaintiffs offer no argument concerning this potential exhibit. (*See generally* Doc. 129.) Indeed, it is unclear how such an assessment could be relevant to the remaining claims in this action, particularly given the fact that Ms. Saucedo is not a plaintiff. Accordingly, the Court finds Plaintiffs fail to meet their burden to show manifest injustice related to the mental health re-assessment of Ms. Saucedo

### 5. Remaining exhibits (Items 7-11, 13, and 14)

Plaintiffs seek leave to add recorded statements from Officers Patino and Celedon; Bakersfield Police Department Policies and Procedures on use of force, deadly force, conducted electrical weapons, and officer-involved shootings; Learning Domains, a PowerPoint presentation concerning

---

[3] Moreover, the Court notes Mr. Bryce and Mr. Cope—subject to the limitations identified in the Order on the Motions in Limine—are not precluded from offering oral testimony concerning their opinions.

"Use of Force" and a "Training Bulletin." (Doc. 129 at 19.) Plaintiffs contend manifest injustice will result because "Plaintiff may be excluded from presenting evidence of the defendants police practices and policies, training and recorded statements…" (*Id.* at 12.) Significantly, however, Plaintiffs fail to explain their suggestion that they would be precluded from *all* evidence concerning police practices, policies, and training procedures, such that manifest injustice would result.

Although Plaintiffs contend the surprise to Defendants is limited because the documents were originally disclosed in 2019—and some were produced by Defendants— Defendants would undeniably suffer prejudice if the Pretrial Order were amended to permit the additional exhibits. The late date of the pending application significantly impaired the ability of Defendants to cure the prejudice through the filing of motions in limine raising evidentiary objections, as the trial begins in less than a week. Amendment at this juncture would impact the orderly and efficient conduct of the case as well, as it allows Plaintiffs to effectively avoid the requirements of the Court to meet and confer regarding the exhibits, produce exhibits well in advance of the trial, and allow the parties to "pre-mark and examine each other's exhibits." (*See* Doc. 99 at 20-21.) Finally, as Defendants argue, the actions of Plaintiffs' counsel appear willful. Counsel elected to ignore this Court's Pretrial Order and Order on Motions in Limine until the eve of trial.[4]

Consequently, balancing the relevant factors, the Court finds Plaintiffs have failed to carry the burden to show manifest injustice would result from the denial of the motion to amend the Pretrial Order to add the identified exhibits.

### B. Relief under Rule 60(b)

"To qualify for equitable relief under Rule 60(b)(1), the movant must demonstrate 'mistake, inadvertence, surprise, or excludable neglect.'" *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038,

---

[4] As noted above, the Court may consider the diligence of the moving party. *See WLD Investors, Inc.*, 35 Fed. App'x at 612 (9th Cir. 2002) (the moving party's "extreme lack of diligence" did not establish manifest injustice). Counsel has not demonstrated diligence in their prosecution of this action. Although counsel maintain they were busy with trials, there is no explanation for counsel's failure to read the Court's orders thoroughly—particularly related to the motions in limine, which clearly discussed Plaintiffs' failure to incorporate certain evidence in the list of exhibits— or their complete disregard of the ordered exhibit deadlines. There is no explanation why they believed that they had no obligation to the Court or their clients to review filings. This lack of diligence also supports the determination that Plaintiffs fail to demonstrate manifest injustice.

1043 (9th Cir. 1992). Here, Plaintiffs seek relief under Rule 60(b)(1) on the grounds that the "additional exhibits… were inadvertently omitted from the PTCO." (Doc. 129 at 12.)

Counsel's pattern of ignoring this action does not support the request for relief in this action. It is appears that neither Mr. Diggs nor Mr. Bryant reviewed this Court's Pretrial Order or its Order on the Motions in Limine after the orders were issued, despite being designated trial counsel on the matter. Their reported ignorance of the contents of these orders until December 27, 2022, does not amount to a "inadvertent" error supporting relief under Rule 60(b)(1). Instead, this was a decision, either because they chose to ignore this case until the eve of trial or because they have organized their offices in a way that does not allow timely review of the Court's orders. As the Ninth Circuit explained, "'[n]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1).'" *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir. 1986)); *see also Smith v. Stone*, 308 F.2d 15, 18 (9th Cir. 1962) (counsel's failure of to follow ordinary court procedure and rules was not excusable inadvertence or neglect supporting relief under Rule 60(b)). Rather, parties may be bound to the actions of counsel, which "includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006); *see also Timbisha Shoshone Tribe v. Kennedy,* 267 F.R.D. 333, 336 (E.D. Cal. 2010) ("Rule 60(b)(1)'s reference to inadvertence or excusable neglect does not authorize relief from the consequences of negligence or carelessness") (quotations and citation omitted). Accordingly, to the extent that Plaintiffs seek relief under Rule 60(b)(1), the request is denied.

## V.     Conclusion and Order

For the foregoing reasons, Plaintiffs' *ex parte* application to modify the Pretrial Order and identify additional exhibits (Doc. 129) is **DENIED**.

IT IS SO ORDERED.

Dated:   **January 3, 2023**

UNITED STATES DISTRICT JUDGE

14