**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAMETRIA NASH-PERRY,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BAKERSFIELD, et al,<br><br>    Defendants.<br><br>JASON OKAMOTO, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF BAKERSFIELD et al.,<br><br>    Defendants. | Case No.: 1:18-cv-01512 JLT CDB<br><br>ORDER DENYING PLAINTIFFS' MOTION TO AMEND THE PRETRIAL ORDER<br><br>(Doc. 181) |

Tametria Nash-Perry and Jason Okamoto seek to hold Bakersfield Police Officer Alejandro Patino and the City of Bakersfield liable for the fatal shooting of Christopher Okamoto under federal and state law. (*See generally* Docs. 38, 44.) The Court held a jury trial, which ended with a mistrial after the jury could not reach a unanimous verdict. A new trial is set for February 13, 2024.

Plaintiffs now request the Court amend the Pretrial Order to allow Plaintiffs to add an expert witness to testify about the trajectory of the rounds fired from the officer's gun and to identify several

1

exhibits not previously included in the Pretrial Order for the first trial. (Doc. 181.) Defendants oppose the proposed modifications, asserting discovery should not be re-opened and Plaintiffs fail to show manifest injustice would result. (Doc. 183.) For the reasons set forth below, the motion is **DENIED**.

## I.     Relevant Procedural Background

Tametria Nash-Perry and Jason Okamoto are the parents of Christopher Okamoto, and they assert the defendants are liable for the wrongful death of their son. On October 31, 2018, Ms. Nash-Perry filed a complaint asserting claims on her own behalf on behalf of the decedent. (Doc. 1.) On August 14, 2019, Mr. Okamoto also filed a complaint, stating claims on his own behalf and as the decedent's successor-in-interest.[1] (Doc. 1, Case No. 1:19-cv-1125-LJO-JLT.) The Court consolidated the actions on November 8, 2019. (Doc. 42.)

Ms. Nash-Perry identified the following claims for relief in her Fourth Amended Complaint: (1) unreasonable use of deadly force; (2) violation of substantive due process; (3) interference with familial relationship and freedom of association; (4) battery; (5) negligence; (6) *Monell* liability for an unconstitutional custom, practice, or policy; (7) *Monell* liability for inadequate training; and (8) *Monell* liability for ratification of wrongful acts. (*See generally* Doc. 38 at 1, 10-28.) Similarly, Mr. Okamoto identified the following claims for relief against the City of Bakersfield and Officer Patino: (1) excessive force in violation of the Fourth and Fourteenth Amendments, (2) violation of substantive due process under the Fourteenth Amendment, (3) conspiracy to violate civil rights, and (4) wrongful death under California law. (Doc. 1, Case No. 1:19-cv-1125-LJO-JLT.)

On June 16, 2021, the parties stipulated to dismiss several causes of action with prejudice. (Doc. 59.) Ms. Nash-Perry dismissed the Sixth, Seventh, and Eighth causes of action asserting *Monell* liability. (*Id.* at 2.) Mr. Okamoto dismissed his claims against the City of Bakersfield for violations of the Fourth and Fourteenth Amendments. (*Id.*) In addition, Mr. Okamoto dismissed the third cause of action for conspiracy to violate civil rights against both defendants. (*Id.*) The Court approved the stipulation and dismissed the claims with prejudice on June 21, 2021. (Doc. 60.)

---

[1] The complaint filed by Mr. Okamoto also included claims by the minor plaintiff Z.S. (*See* Doc. 1, Case No. 1:19-cv-1125-LJO-JLT.) However, the Court granted summary adjudication of the claims of Z.S. (Doc. 79.)

On July 8, 2021, Defendants moved for summary judgment. (Doc. 61.) Plaintiffs argued the physical evidence supported a conclusion that Okamoto was not standing in the position Patino described. (*See* Doc. 64 at 10-11, 18-21.) According to Plaintiffs, "analysis of the gunshot wounds that [] Okamoto sustained demonstrates that [Okamoto] could not have been facing Officer Patino in a 'one-handed shooting stance' and pointing an object at Officer Patino during the entirety of the time that Officer Patino was firing his weapon." (*Id.* at 21.) Plaintiffs asserted:

> The locations and trajectories of those wounds, including two gunshot wounds to the outer left chest that traveled front to back and left to right (east to west direction), are consistent with a movement in which [the decedent] was rotating away from Patino in a westerly direction in an attempt to retreat while trying to close the front door with his left arm, exposing his entire left side of his body to Officer Patino's gunfire.

(*Id.*) Plaintiffs concluded that "[b]ased upon the upon the physical evidence, we know that it would have been virtually impossible to achieve the gunshot wound positioning and trajectories if you relied on Officer Patino's statements." (*Id.* at 24.)

Defendants argued Plaintiff's claims concerning the physical evidence failed, noting that Plaintiffs did not identify any expert opinions concerning trajectory or positioning. (Doc. 73 at 11-12.). Specifically, Defendants observed:

> The Plaintiffs do not offer the testimony or opinions of a ballistics expert regarding bullet trajectory or a bio-mechanical expert who renders opinions regarding Christopher Okamoto's body position. The Plaintiffs do not offer opinions of a forensics expert who reviewed the location of the casings. The Plaintiffs do not offer expert testimony in terms of where Officer Patino was compared to where Christopher Okamoto was and the forensic impact of those locations, or how Officer Patino's height compared to Christopher Okamoto's height impacted body trajectory. The Plaintiffs do not offer any expert whatsoever who could say that any or all of the bullet wounds were inconsistent with Officer Patino's statements about what happened, or that the wounds would have precluded Christopher Okamoto from continuing to point the gun at Alejandro Patino or which shows that Christopher Okamoto did not remain a threat to Officer Patino. Nor do Plaintiffs offer any expert who rendered opinions on the impact of bullet trajectories when the bullets pass through a metal security gate.

(Doc. 73 at 11-12.) Defendants argued the lack of expert opinions on these topics was "fatal to the Plaintiffs' argument," which was based only on theories rather than "admissible expert testimony." (*Id.* at 12, 13.)

The Court determined: "The evidence before the Court creates a dispute related to the positioning of the decedent." (Doc. 79 at 29.) The Court observed that, as Plaintiffs argued, a jury could interpret the physical evidence to find that "the decedent was not standing in the position identified by Patino and he could have exposed his left side only when turning away from the officer." (*Id.*) Because the Court was required to interpret the evidence in favor of the non-moving parties, the Court denied summary judgment on August 31, 2021. (*Id.* at 29-30, 35.)

In October 2021, the parties began conferring about the Joint Pretrial Statement. (*See* Doc. 132-1 at 2, Cohen Decl. ¶ 2.) However, after the parties received an email from the Court indicating it was unlikely the trial would be conducted as scheduled (*see* Doc. 132-1 at 19), the parties ceased their discussions concerning the Joint Pretrial Statement. The communications between counsel resumed in May 2022, in anticipation of the trial re-scheduled for January 9, 2023. (*See* Doc. 129 at 6; Doc. 132 at 4.) Defendants filed the Joint Pretrial Statement on May 27, 2022, which included the digital signatures of Mr. Meigs and Mr. Bryant on behalf of Plaintiffs. (Doc. 95 at 43.)

The Court held its pretrial conference with the parties on June 3, 2022. (Doc. 98.) During the conference, the Court discussed the obligation of the parties to meet and confer concerning exhibits—and to provide anticipated trial exhibits to the opposing party for examination—prior to filing any motions in limine. The Court issued its Pretrial Order setting forth applicable deadlines on June 6, 2022. (Doc. 99.) In the Pretrial Order, the Court incorporated all exhibits identified by the parties in their joint statement, which included the following exhibits for Plaintiffs:

1. Photographs of Scene and Apartment Complex
2. Photographs of Officer Patino in uniform on date of incident
3. Incident Reconstruction Photographs
4. Investigative Reports
5. Medical Records
6. Coroner's Report/Autopsy Report

(*Id.* at 19.) The Court informed the parties: "NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE PREVENTED TO PREVENT 'MANIFEST INJUSTICE.'" (*Id.* at 18, citing Fed. R. Civ. P. 16(e), Local Rule 281(b)(11) [emphasis in original].) The parties were instructed to "meet and confer to discuss any disputes related to the above listed exhibits and to pre-

4

mark and examine each other's exhibits" no later than June 27, 2022.  (*Id.* at 20.)  The Court granted the parties 14 days to "file and serve written objections to any of the provisions set forth in [the] order."  (*Id.* at 25.)  No objections were filed by either party.

Both parties filed motions in limine on July 1, 2022.  (Docs. 102, 104.)  Defendants moved to exclude any argument "the location of the bullet wounds was inconsistent with Officer Patino's testimony that Mr. Okamoto had been pointing his gun at Officer Patino."  (Doc. 102 at 12.)  Defendants also moved to exclude certain opinions from Plaintiffs' police procedure expert, Richard Bryce.  (Doc. 102 at 14.)  The Court granted these motions on August 15, 2022.  (Doc. 126 at 14-22.)

On December 28, 2022, Plaintiffs moved for *ex parte* relief, seeking modification of the Court's pre-trial order.  (Doc. 129.)  Plaintiffs requested to identify the following as their trial exhibits:

1. Photographs of Scene and Apartment Complex
2. Photographs of Officer Patino in uniform on date of incident
3. Incident Reconstruction Photographs
4. Investigative Reports
5. Medical Records
6. Coroner's Report/Autopsy Report
7. Officer Patino's training records
8. Bakersfield Police Department Policies and Procedures
   a. Policy 300 – Use of Force
   b. Policy 302 – Deadly Force Review
   c. Policy309 – Conducted Electrical Weapon
   d. Policy 310 – Officer-Involved Shootings
9. Learning Domains
   a. LD 20 – Use of Force
   b. LD 33 – Arrest and Control
10. Academy Use of Force Power Point
11. Training Bulletin
    a. Escalation & De-escalation of Force
    b. Use of Force Considerations
12. Photos from Brittney Saucedo Phone with Christopher Okamoto
13. Officer Patino's Recorded Statements
14. Officer Celedon's Recorded Statements
15. Brittney Saucedo Annual Mental Health Reassessment
16. Dick Bryce Expert Report
17. Curtis Cope Expert Report
18. Okamoto and Nash-Perry Family Photos
19. Video clips of Christopher Okamoto

(Doc. 129 at 7, 15-17.)  Numbers 1 through 6 were identified in the Pretrial Order.  (Doc. 99 at 19.)  Thus, Plaintiffs requested leave to add 13 exhibits, identified as Items 7-19 above.  The Court found Plaintiffs "failed to carry the burden to show manifest injustice would result from the denial of the motion to amend the Pretrial Order to add the identified exhibits," and denied the relief requested

under Rule 16 of the Federal Rules of Civil Procedure. (Doc. 134 at 13; *see also id.* at 9-13.)

The trial began on January 9, 2023. (*See* Doc. 138.) After the jury reported it could not reach a unanimous verdict, the Court declared a mistrial on January 19, 2023. (Doc. 157.) The parties agreed the matter shall be retried, and the second trial is now set for February 13, 2024. (Docs. 168, 169.)

On February 21, 2023, the Court ordered the parties to "file any proposed modification to the Pretrial Order—a including any changes to witnesses and exhibits—no later than June 2, 2023." (Doc. 173 at 1-2, emphasis omitted.) The Court also indicated that "the rulings on the past motions in limine remain in effect." (*Id.* at 2.)

On June 2, 2023, the parties filed a Joint Pretrial Statement, in which Plaintiffs identified exhibits not included in the Court's Pretrial Order. (*Compare* Doc. 180 at 47-48; *with* Doc. 99 at 19.) Plaintiffs also indicated a "Forensic Pathologist/ Neuropathologist/ Epidemiologist/Trajectory Expert [would] be named as soon as possible." (Doc. 180 at 45.) The same date, Plaintiffs filed their motion for modification of the Pretrial Order. (Doc. 181.) Defendants filed their opposition to the motion on June 16, 2023. (Doc. 183.) Plaintiffs did not file a reply.

## II.     Amendment of a Pretrial Order

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, "The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. P. 16(e). An order issued after this conference "controls the course of the action unless the Court modifies it." Fed. R. Civ. P. 16(d). The pretrial order plays a "crucial rule … in 'implementing the purposes of the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action.'" *Sousa v. Unilab Corp. II (Non-exempt) Mbrs. Group Benefit Plan*, 252 F.Supp.2d 1046, 1058 (E.D. Cal. 2002) (quoting *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir.1981)). Thus, in order "to prevent unfair surprise and encourage timely and orderly litigation," parties may not "offer evidence or advance theories at trial which are not included in the order or which contradict its terms." *Sousa,* 252 F.Supp.2d at 1058 (quoting *First Nat'l Bank of Circle*, 652 F.2d at 886).

Significantly, "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Under this "manifest injustice" standard, a pretrial

order "is not an inexorable decree and may, under proper circumstances, be modified." *Jeffries v. United States*, 477 F.2d 52, 55 (9th Cir. 1973). Nevertheless, "manifest injustice" is a high standard, and requires more than good cause for amendment. *See United States ex rel. Concilio De Salud Integral De Loíza, Inc. v. J.C. Remodeling, Inc.*., 962 F.3d 34, 41 (5th Cir. 2020) (manifest injustice "is a higher standard than is otherwise imposed"); *Paramount Farms, Inc. v. Ventilex B.V.*, 2010 WL 3943599, n.3 (E.D. Cal. Oct. 4, 2010) (observing the standard to amend a pretrial order is under Rule 16(e) is "more stringent").

To evaluate a request to amend a pretrial order, the Ninth Circuit instructs courts to consider "(1) the degree of prejudice or surprise to the [non-movant] if the order is modified; (2) the ability of the [non-movant] to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the [movant]." *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005). In addition, the Court may consider the diligence of the moving party. *See WLD Investors, Inc. v. Xecom Corp.*, 35 Fed. App'x 609, 612 (9th Cir. 2002) (acknowledging "adverse consequences" to the moving party but finding their "extreme lack of diligence" did not establish manifest injustice). The burden is on the moving party to show the requested amendment is necessary to prevent manifest injustice. *Galdamez*, 415 F.3d at 1020; *see also Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir. 1998) ("It is the moving party's burden to show that a review of these factors warrants a conclusion that manifest injustice would result if the pretrial order is not modified") *superseded on other grounds*.

"With respect to retrials, district courts have the discretion to admit or exclude new evidence or witnesses on retrial." *Fresno Rock Taco, LLC v. Nat'l Surety Corp.*, 2013 WL 3803911, at *1 (E.D. Cal. July 18, 2013) (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co*., 195 F.3d 765, 775 (5th Cir. 1999); *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449-50 (10th Cir. 1993); *Total Containment, Inc. v. Dayco Prods. Inc.*, 177 F. Supp. 2d 332, 338-39 (E.D. Pa. 2001); Wright & Miller, Federal Practice & Procedure § 2803 (3d ed.)). The Court's discretion extends to permitting or refusing additional discovery. *See Habecker v. Clark Equip. Co.*, 36 F.3d 278, 288 (3d Cir. 1994); *see also Yong v. Nemours Found.*, 432 F.Supp.2d 439, 441-42 (D. Del. 2006) (granting in part a motion for additional discovery and new expert witnesses in preparation for a retrial).

Importantly, "if the moving party knew or should have known that certain witnesses or evidence was necessary at the time of the first trial, then the exclusion of those witnesses during the retrial will likely not be manifestly unjust." *Fresno Rock Taco*, 2013 WL 3803911, at *1 (citation omitted); *see also American Int'l Trading Corp. v. Petroleos Mexicanos,* 835 F.2d 536, 539 (5th Cir. 1987) ("If the [moving party] knew or should have known that the witnesses were necessary, then the exclusion of those witnesses was not manifestly unjust.").

**III.     Discussion and Analysis**

Plaintiffs request the following amendments to the Pretrial Order: (1) inclusion of "one additional expert witness regarding trajectory," (2) the identification of additional exhibits, and (3) permission for "expert Richard Bryce to discuss his opinions." (Doc. 181 at 3-4, 8 [emphasis omitted].) Defendants oppose the motion, arguing Plaintiffs fail to show manifest injustice would result from the denial of the motion. (*See generally* Doc. 183.)

**A.     Addition of a Trajectory Expert**

In the parties new Joint Pretrial Statement—filed in anticipation of the second trial—Plaintiffs indicated a "Forensic Pathologist/ Neuropathologist/ Epidemiologist/Trajectory Expert [would] be named as soon as possible." (Doc. 180 at 45.) Plaintiffs now seek leave to amend the Pretrial Order to include a trajectory expert. (Doc. 181 at 5.)

Notably, Plaintiffs do not seek leave to include a previously disclosed expert, who was simply omitted from the Pretrial Order. Rather, Plaintiffs implicitly seek leave to re-open expert discovery for the purpose of identifying a trajectory expert. Plaintiffs assert:

> Plaintiffs intended to show that Officer Patino shot decedent, Christopher Okamoto could not have been possibly standing in the position Officer Patino describes given the wounds that were on Christopher Okamoto's body. Officer Patino described Mr. Okamoto's position as standing in a "one handed shooting stance" where his right hand was extended outward with the subject's right shoulder slightly forward (south) and the subject had the firearm in his right hand. Therefore, his right chest would have been the dominate and open area of the body, whereas the left side of the body would have been closed in and further away. The physical evidence, which includes the anatomical location and direction of the gunshot wounds sustained by Mr. Okamoto along with Officer Patino's testimony that Mr. Okamoto took a step back, is more consistent with a movement in which Mr. Okamoto was retaining away from Officer Patino in a westerly direction in an attempt to retreat while trying to close the front door with his left arm, exposing his entire left side of his body to Officer Patino's gunfire.

> Mr. Okamoto sustained multiple gunshot and bullet fragment wounds that dominated the far upper left side of his body, with the only discernable horizontal trajectory being left to right (westbound) and not right to left (eastbound). These injuries are consistent with someone beginning to turn their body to retreat. Further, the wound to the upper left trapezi also signifies that Mr. Okamoto was likely falling down at the time the bullet entered his body.

(Doc. 181 at 6.) Plaintiffs assert they previously sought to establish the bullet trajectory and Okamoto's position through the testimony of Dr. Richard Whitmore, a forensic pathologist who performed the autopsy. (*Id.*) Plaintiffs contend that they "were not aware that they needed an expert trajectory witness … until after the first trial." (*Id.*)

According to Plaintiffs, the addition of a trajectory expert is appropriate under Rule 16(e). (Doc. 181 at 5-8.) Plaintiffs argue that "[t]here is very little to any prejudice or surprise to Defendants" because they notified Defendants on May 17, 2023 they "would seek to add an additional expert witness." (*Id.* at 6-7.) Plaintiffs maintain that "any potential prejudice" may be cured because Defendants can "take any additional expert depositions" prior to the second trial. (*Id.* at 7.) Further, Plaintiffs assert a trajectory expert "will create a more efficient way to present [their] theory of the case." (*Id.*) Plaintiffs believe an expert "will have a positive impact on the orderly and efficient conduct of the trial by allowing the jury to better understand Plaintiffs' position without speculation and conjecture." (*Id.* at 7.) For example, Plaintiffs postulate:

> A trajectory expert[] will be able to better explain that based on the wounds found in Mr. Okamoto's body, and the injuries that Mr. Okamoto suffered, there is no way the Officer Patino's description is correct. Additionally, the opinion of an expert trajectory witness will also better explain to the jurors that the physical evidence, is more consistent with a movement in which Mr. Okamoto was retaining away from Officer Patino in a westerly direction in an attempt to retreat while trying to close the front door with his left arm, exposing his entire left side of his body to Officer Patino's gunfire.

(*Id.*) Finally, Plaintiffs contend they have not demonstrated any willfulness or bad faith in seeking leave to add a trajectory expert. (*Id.* at 8.)

Defendants argue that "Plaintiffs have not and cannot demonstrate manifest injustice to reopen expert discovery." (Doc. 183 at 4.) Defendants assert they would be prejudiced by the designation of a new expert, because Defendants would also would "have to locate, hire, and designate a rebuttal expert in the same field." (*Id.* at 8.) Defendants observe a new expert would require the preparing and

exchanging expert reports, taking depositions, and allowing for potential *Daubert* motions. (*Id.*) As a result, Defendants contend the reopening of discovery would "take a significant amount of time" and "cost the City a substantial amount of money." (*Id.*) Defendants assert the re-opening of discovery would also "burden the Court in having to address any issues that arise from these new or additional expert opinions," and "adversely impact the orderly and efficient conduct of the trial." (*Id.* at 8-9.) Furthermore, Defendants contend Plaintiffs should have known a trajectory or ballistics expert was necessary, because "since the outset of this litigation that it has been the Defendants' position that Mr. Okamoto pointed a gun at Officer Patino which prompted Officer Patino to use deadly force." (*Id.* at 7.) Defendants maintain, "Plaintiffs took a calculated risk in deciding not to have a retained expert witness to testify as to body positioning and bullet trajectory," and "should not be able to cure their gamble." (*Id.* at 7, 9 [emphasis omitted.]) Defendants argue, "A party's regret over an unwise tactical choice only to now realize that this was a mistake, is not the kind of 'manifest injustice' that Rule 16(e) was designed to remedy." (*Id.* at 6, quoting *Beene v. Ford Motor Co.*, 2011 WL 765982, at *2 (D. CO Feb. 25, 2011) (internal quotation marks omitted).)

Significantly, as Defendants argue, the reopening of discovery for Plaintiff to identify a new expert would cause prejudice to Defendants. This Court observed that reopening discovery may prejudice the non-moving party "when it requires additional costs and major alterations in trial tactics and strategy." *Morris v. Sutton*, 2019 WL 2994291, at *5 (E.D. Cal. July 9, 2019) (citing *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016)). If the Court were to grant Plaintiffs leave to reopen discovery to name a trajectory expert, Defendants would likewise need the opportunity to name an expert and/or a rebuttal expert and would incur additional costs in doing so. *See Yeoman v. Ikea U.S. West, Inc.*, 2013 WL 5727547 at *4 (S.D. Cal. Oct. 22, 2013) (finding additional costs weighed against reopening discovery where a defendant "incur additional costs by having to designate an expert of its own to rebut whatever Plaintiffs new expert offers opinions about, as well as to incur costs reviewing Plaintiffs' expert's opinions and taking the expert's deposition"). Clearly, a new expert would also require changes in trial tactics used in the first trial. The limited time before trial—particularly considering parties received *two years* to complete expert discovery—offers little opportunity to cure the prejudice that would result. (*See* Doc. 19 [the Court's initial scheduling

10

order, dated March 11, 2019]; Doc. 55 at 2 [continuing the expert discovery deadline, based upon a stipulation of the parties, to April 13, 2021].)

Reopening expert discovery at this juncture could also interfere with the orderly and efficient conduct of trial if the parties had *any* dispute related to the disclosures, report, or qualifications of the expert. Any such dispute would likely require a significant continuance of the second trial given the judicial emergency currently existing in this Court, its limited judicial resources, and its impacted trial schedule. Though it does not appear that Plaintiffs are exhibiting bad faith in seeking to add a trajectory expert, they have demonstrated a lack of diligence in seeking additional discovery related to a trajectory expert, which also weighs against granting the relief requested.

Plaintiffs' assertion that they "were not aware that they needed an expert trajectory witness and the additional exhibits until after the first trial" (Doc. 181 at 6) is flatly contradicted by the record. Indeed, Plaintiffs acknowledge their **<u>entire</u>** theory of the case is based upon the showing that Mr. Okamoto was not standing in the position identified by Patino. Plaintiffs made this argument when opposing summary judgment, at which time Plaintiffs asserted an "analysis of the gunshot wounds that [] Okamoto sustained demonstrates that [Okamoto] could not have been facing Officer Patino in a 'one-handed shooting stance' and pointing an object at Officer Patino during the entirety of the time that Officer Patino was firing his weapon." (Doc. 64 at 21.) Plaintiffs argued that "[t]he location *and trajectories*" of Okamoto's wounds were "consistent with a movement in which [he] was rotating away from Patino in a westerly direction in an attempt to retreat." (*Id.*, emphasis added.) Defendants challenged this theory of the case, asserting the lack of any "admissible expert testimony" was "fatal to Plaintiffs' argument." (Doc. 73 at 12.) Defendants argued:

> The Plaintiffs do not offer *the testimony or opinions of a ballistics expert regarding bullet trajectory or a bio-mechanical expert* who renders opinions regarding Christopher Okamoto's body position. The Plaintiffs do not offer opinions of a forensics expert who reviewed the location of the casings. The Plaintiffs do not offer expert testimony in terms of where Officer Patino was compared to where Christopher Okamoto was and the forensic impact of those locations, or how Officer Patino's height compared to Christopher Okamoto's height impacted body trajectory.

(*Id.* 11-12 [emphasis added].) Again, the lack of a trajectory expert was raised *before* the first trial when the Court granted Defendants' motion to exclude any argument "the location of the bullet wounds

11

was inconsistent with Officer Patino's testimony that Mr. Okamoto had been pointing his gun at Officer Patino." (Doc. 102 at 12.) The arguments in the motion for summary judgment and the motion *in limine*, as well as the Court's rulings thereon prior to the first trial, clearly show Plaintiffs made a tactical decision to not seek a trajectory or ballistics expert prior to the first trial. Plaintiffs' regret over failing to obtain a trajectory expert—and their decision to build their case through other witnesses and evidence—does not support a finding of manifest injustice. *See Cleveland*, 985 F.2d at 1449, 1450 (observing that "[i]t is always easy in hindsight for counsel to realize there may be a better way to try a case the second time around," but indicating the parties must show manifest injustice for identifying new witnesses at a second trial). Accordingly, the Court finds Plaintiffs fail to meet their burden to show manifest injustice would result if expert discovery were not reopened. To the contrary, granting such relief would engender manifest injustice rather than prevent it.

**B.     Plaintiff's Requested Exhibits**

In the parties' Joint Pretrial Statement—filed in response to the Court's order directing the parties to file any proposed modifications to exhibits—Plaintiffs identified several exhibits not included in the Court's Pretrial Order. (*Compare* Doc. 180 at 47-48; *with* Doc. 99 at 19.) Plaintiffs now request the Court amend the Pretrial Order to include the following exhibits:

1. Photographs of Scene and Apartment Complex
2. Photographs of Officer Patino in uniform on date of incident
3. Incident Reconstruction Photographs
4. Investigative Reports
5. Coroner's Report/Autopsy Report
6. Officer Patino's training records
7. Bakersfield Police Department Policies and Procedures
    a. Policy 300 Use of Force
    b. Policy 302 Deadly Force Review
    c. Policy 309 Conducted Electrical Weapon
    d. Policy 310 Officer- Involved Shootings
8. Photos from Brittney Saucedo Phone with Christopher Okamoto
9. Officer Patino's Recorded Statements
10. Officer Celedon's Recorded Statements
11. Okamoto and Nash-Perry Family Photos
12. Demonstrative Prop of a Door
13. Funeral Costs
14. Video Clips from Christopher Okamoto's Funeral

(Doc. 181 at 3-4.) Plaintiffs contend they "were not aware they needed … the additional exhibits until after the first trial." (*Id.* at 6.) Defendants oppose modifying the exhibit list, noting the Court

12

previously excluded some of the identified exhibits in ruling on the motions in line, and other proposed exhibits were not disclosed to Defendants. (Doc. 183 at 9-10.)

### 1. Items 1-5

The first five items listed above were identified as exhibits in the Pretrial Order. (Doc. 99 at 19.) Thus, no amendment is necessary related to these exhibits.

### 2. Training records

As an initial matter, Plaintiffs did not provide copies to the Court of the proposed exhibits. Without such documents, it is unclear what "training records" Plaintiffs seek to identify as exhibits. Moreover, Plaintiffs do not make *any* argument regarding "Officer Patino's training records." In fact, the only mention of the "training records" is in the proposed list of exhibits. The Court declines to manufacture an argument on Plaintiffs' behalf to show manifest injustice would result if the "training records" were not permitted. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003 (noting the Ninth Circuit "repeatedly admonished" the Court "cannot manufacture arguments" on behalf of a party); *see also Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (indicating the Court would not address a matter that was not "specifically and distinctly argue[d]" by the plaintiff).

### 3. BPD policies and procedures

In support of the request to include the police department's policies and procedures as exhibits, Plaintiffs broadly state:

> The Bakersfield Police Department Policies and Procedures, the Learning Domains, the Academy Use of Force Power Point, and the Training Bulletins will [] assist the jury to determine whether or not Officer Patino's use of force was reasonable or unreasonable in this incident. All of the additional training, policies, procedures and learning domains are used within Officer Patino's department and the State of California to determine whether the use of force was objectively reasonable.

(Doc. 181 at 8.) Defendant opposes the inclusion of Bakersfield Police Department policies as exhibits, asserting they "are clearly inadmissible." (Doc. 183 at 9-10, citing *e.g., Trevino v. City of Bakersfield*, 2016 U.S. Dist. Lexis 93294, at * 25-26 (E.D. CA July 18, 2016); *CF Roguz v. Walsh*, 2013 U.S. Dist. Lexis 50985, * 22-23 (D. CT 2013); *Whren v. United States*, 517 U.S. 806, 815 (1996).)

Plaintiffs do not identify which specific Learning Domains or Training Bulletins they seek to identify as exhibits. In addition, the Learning Domains and Training Bulletins are not included either

in the list above or the new Joint Pretrial Statement. (Doc. 181 at 1-3; Doc. 180 at 47 [new Joint Pretrial Statement].) Similarly, Plaintiffs did not list the "Academy Use of Force Power Point" as a potential exhibit. (Doc. 181 at 1-3; *see also* Doc. 180 at 47.) Thus, it appears Plaintiffs no longer seek to exhibit these materials.[2] (*See* Doc. 180 at 47 [new Joint Pretrial Statement].)

Moreover, absent a showing the written materials are not hearsay, or there is a hearsay exception, the polices could not be admitted. To the extent a Department policy is relevant—despite the dismissal of the *Monell* claims—an expert witnesses may discuss it but only *if it formed a basis for the expert's opinion*. For example, a police procedure expert may testify as to how a well-trained officer will act, based upon his or her training. On the other hand, identifying the policies and training materials as exhibits would disrupt the conduct of trial, as the deadline for motions *in limine* has expired and Defendants would be forced to raise any evidentiary objections during the trial. The Court previously determined Plaintiffs failed to demonstrate manifest injustice related to these materials (Doc. 134 at 13), and it declines to disturb that finding.

### 4. Officers' recorded statements

Plaintiffs included the recorded statements of Officers Patino and Celedon as potential exhibits in their list. (Doc. 181 at 3-4.) However, this was the only mention of the recorded statements in the motion, and Plaintiffs did not provide any argument in support of a conclusion that manifest injustice would result if the recorded statements were not exhibited. (*See generally id.* at 5-8.) Again, the Court declines to argue on Plaintiffs' behalf that manifest injustice would result if the recorded statements are not exhibits. It is Plaintiffs' burden to do so when pursuing a motion under Rule 16(e). *See Indep. Towers*, 350 F.3d at 929; *Byrd*, 137 F.3d at 1132 (indicating it is the burden of the moving party to demonstrate exhibits are necessary to prevent manifest injustice).

### 5. Pre-incident photos of Decedent

Plaintiffs seek to include unidentified "Photos from Brittney Saucedo Phone with Christopher Okamoto" and "Okamoto and Nash-Perry Family Photos." (Doc. 181 at 3-4.) Importantly, the Court previously granted the motion *in limine* to exclude any pre-incident photographs of Defendant. (Doc.

---

[2] The Court also will not speculate as to which specific Learning Domains or training materials Plaintiffs may have intended to exhibit.

126 at 29.) In so ruling, the Court observed:

> [T]hough pictures may be relevant to damages, pre-incident photographs "run[] the risk of eliciting the sympathy of the jury and not accurately representing the decedent on the day of the incident at issue in this action." *See Crawford v. City of Bakersfield*, 2016 WL 5870209 at *7 (E.D. Cal. Oct. 6, 2016); *see also Estate of Jaquez v. Flores*, 2016 WL 1060841 at *12 (S.D.N.Y. Mar. 17, 2016) (granting a motion in limine to preclude pre-incident photos of the decedent—which included the decedent with his family—for non-damages reasons, as the photographs were "not relevant to any issue" and "clearly serve[d] to elicit sympathy from the jury").

(*Id.* at 28-29.) To the extent Plaintiffs now seek reconsideration of the Court's ruling on the motion *in limine*, Plaintiffs do not demonstrate such relief is appropriate. *See Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Reconsideration is indicated in the face of the existence of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice"). It remains true that pre-incident photographs of Okamoto may elicit sympathy from the jury, without properly representing him on the day of his death. Therefore, the Court's order granting the motion *in limine* to exclude pre-incident photos remains in place and the Pretrial Order will not be amended to include the proposed exhibits.[3]

### 6. Demonstrative door prop

Demonstrative aids may be used in trial and are generally not admitted into evidence. *See United States v. Wright*, 412 F. App'x 993, 993 (9th Cir. 2011); *United States v. Walema*, 194 F.3d 1319 (9th Cir. 1999). Because the demonstrative aid will not be admitted, Plaintiffs do not demonstrate manifest injustice for the door prop being excluded as an exhibit in the Pretrial Order.[4]

### 7. Funeral costs

Plaintiffs seek, for the first time, to include the costs of Okamoto's funeral as an exhibit. (Doc. 181 at 4.) The funeral costs go to the damages suffered by Plaintiffs, which is an element of the

---

[3] Moreover, it is unclear that photos from Ms. Saucedo have any relevance even as to damages because she is no longer a named plaintiff in this action.

[4] Plaintiffs have not provided any information to either Defendants or the Court regarding this demonstrative aid. (*See* Doc. 183 at 9, n.3.) It is unclear whether the door is a replica, has the same characteristics doors, or is the same size of either the security door or front door of the apartment. Therefore, the Court makes no finding regarding the propriety of the door prop at this time.

negligence claim. *See Ileto v. Glock, Inc.,* 349 F.3d 1191, 1203 (9th Cir. 2003) (indicating that to succeed on a claim for negligence, a plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages"). Clearly, Plaintiffs should have known that evidence related to their damages—including funeral costs—was necessary at the time of the first trial and must have made a tactical decision to not present such evidence. As a result, the Court cannot find the exclusion of such evidence at the second trial is manifestly unjust. *See Fresno Rock Taco*, 2013 WL 3803911, at *1; *see also American Int'l Trading Corp.,* 835 F.2d at 539.

### 8. Funeral footage

Plaintiffs request to exhibit unspecified footage from Okamoto's funeral. It is unclear whether this footage includes pre-incident photos of him—which have been excluded, as set forth above—or if the footage is of the *plaintiffs* at the funeral. Regardless, the footage would engender the sympathy of the jury, and would be subject to a motion *in limine* similar to that addressing the photographs of Okamoto. Moreover, the proposed evidence undoubtedly existed at the time of the first trial. Consequently, Plaintiffs fail to demonstrate manifest injustice from its exclusion. *See Fresno Rock Taco*, 2013 WL 3803911, at *1; *see also American Int'l Trading Corp.,* 835 F.2d at 539.

**C.     Testimony of Richard Bryce**

Plaintiffs observe that Mr. Bryce, their police procedures expert, "opined that 'Officer Patino had ample time and space to step to the right side of the doorway, using the exterior wall of … the apartment and the locked security door as cover, and should have attempted to gain compliance from Mr. Okamoto before using deadly force.'" (Doc. 181 at 8-9, quoting Doc. 102 at 14.) Plaintiffs contend that Mr. Bryce should be permitted "to discuss his opinions." (*Id.* at 8, emphasis omitted.) Defendants oppose the request of Plaintiffs "to expand on the opinions" of Mr. Bryce. (*See* Doc. 183 at 9.)

Importantly, the Court addressed the opinions of Mr. Bryce in its order on Defendants' Motion In Limine Number 4. (Doc. 126 at 16-22.) Thus, it appears Plaintiffs seek reconsideration of the Court's ruling.

### 1. Order on motions in limine

In the motion, Defendants observed that Mr. Bryce gave the following "opinions and observations" in his report:

16

> 1. Officer Alejandro Patino unnecessarily used deadly force when he had other options available to him.
> 2. Officer Patino failed to inform Mr. Okamoto that he was going to use deadly force prior to shooting him.
> 3. Officer Patino's commands to open the door were not necessarily decipherable to Mr. Okamoto's [sic] while he was in his apartment.
> 4. Officer Patino did not attempt to de-escalate the confrontation with Mr. Okamoto rather than immediately begin shooting him eight times.

(Doc. 102 at 14, quoting Bryce Report pp. 2-4 [Doc. 102 at 86-87].) Mr. Bryce summarized his "ultimate opinion" as follows:

> It is my opinion based on the facts and materials presented to me, that when Officer Patino confronted Mr. Okamoto at the door of his residence, Mr. Okamoto was unaware that it was a police officer banging on his door. He apparently approached the door with a BB gun in an attempt to dissuade whoever was at the door from entering his apartment.
>
> When Officer Patino observed the BB gun in Mr. Okamoto's hand he immediately, without warning, began firing at Mr. Okamoto through the locked security door.
>
> Officer Patino had ample time and space to step to the right side of the doorway, using the exterior wall of the wall of the apartment and the locked security door as cover, and should have attempted to gain compliance from Mr. Okamoto before using deadly force.
>
> It is my opinion based on the information I have received and my prior experience as a peace officer, that it was not necessary for Officer Patino to shoot and kill Mr. Okamoto to protect his own safety.

(Doc. 102 at 14, quoting Bryce Report pp. 4-5 [Doc. 102 at 87-88].) Thus, Plaintiffs have extrapolated a portion of the "ultimate opinion," and assert Mr. Bryce should be permitted to discuss it.

As noted by the Court in addressing the motion, under Rule 702 of the Federal Rules of Civil Procedure, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Such expert testimony is permissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Ultimately, the Court found the identified statements of Mr. Bryce included legal

conclusions cast as opinions; speculation; findings of fact "within the purview of the jury;" and opinions that "would not be helpful for the jury," because they did not require any "scientific, technical, or other specialized knowledge." (Doc. 126 at 18-22.) Accordingly, Defendants' motion in limine to exclude these opinions was granted. (*Id.*)

### 2. Reconsideration under Rule 60(b)

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding." *Id.* Rule 60(b) indicates such relief may be granted "for the following reasons:"

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic) misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Reconsideration of a prior order is an extraordinary remedy "to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000) (citation omitted); *see also Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (addressing reconsideration under Rule 60(b)). In seeking reconsideration under Rule 60, the moving party "must demonstrate both injury and circumstances beyond his control." *Harvest*, 531 F.3d at 749 (internal quotation marks, citation omitted).

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law," and it "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)

1  (internal quotations marks, citations omitted) (emphasis in original).  Further, Local Rule 230(j)
2  requires a movant to show "what new or different facts or circumstances are claimed to exist which did
3  not exist or were not shown upon such prior motion, or what other grounds exist for the motion;" and
4  "why the facts or circumstances were not shown" at the time the substance of the order which is
5  objected to was considered.

          3.      Analysis

7        Plaintiffs observe that anticipated changes to Rule 702 of the Federal Rules of Evidence "are
8  not substantive, but rather they clarify how the Rule was meant to be applied since it was first amended
9  in 2000."  (Doc. 181 at 9, citing *In re Anderson*, No. 15-21681, 2023 WL 2229355 (Bankr. W.D. Tenn.
10 Jan. 20, 2023).)  Plaintiffs note that under the anticipated changes—which should be effective
11 December 1, 2023—"proponents do not have to demonstrate by a preponderance of evidence that the
12 assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence
13 that their opinions are reliable."  (*Id.*, quoting Fed. R. Evid. 702 Advisory Committee's Note to the
14 2023 amendment; *see also In re Anderson*, 2023 WL 2229355, at *3-4.  According to Plaintiffs, "using
15 his specialized knowledge, based on the sufficient facts and data involved in this matter, reliable
16 principles, and reliable application of said principles to the facts of this case, Mr. Bryce can show that
17 Officer Patino had other options than to use unnecessary force."  (*Id.* at 9.)

18       Significantly, Plaintiffs point to an *anticipated* changes to the Federal Rules of Evidence.  Thus,
19 there has not yet been a change in controlling law.  Regardless, as Plaintiffs explicitly acknowledge, the
20 changes *are not substantive*.  Under the anticipated changes, an expert's opinion may still be excluded
21 where it is not helpful to the jury, is speculative, or is not "based on sufficient facts or data."  *See In re*
22 *Anderson*, 2023 WL 2229355, at *3-4.  As the Court previously determined, some opinions by Mr.
23 Bryce intrude on the authority of the jury. The jury must review the evidence, including the testimony
24 of the officers regarding how quickly the events unfolded and the space available on the apartment
25 landing, to determine whether Patino had sufficient time and space to take cover.  The opinions of Mr.
26 Bryce on the ultimate issues seek to tell the jury how to determine the relevant questions, rather than to
27 provide them assistance on matters that are beyond their lay experiences. Thus, testimony telling the
28 jury what the facts are is an impermissible "attempt[] to substitute the expert's judgment for the jury's

[judgment]." *See Mukhtar v. Cal. State University*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). Because Plaintiffs fail to show reconsideration of the Court's motion in limine is appropriate, the requested relief is denied.

## IV. Conclusion and Order

Plaintiffs fail to carry the burden to show manifest injustice would result if the Pretrial Order is not amended. In addition, Plaintiffs do not establish they are entitled to the extraordinary remedy of reconsideration under Rule 60. Accordingly, Plaintiffs' motion to amend the Pretrial Order (Doc. 181) is **DENIED**.

IT IS SO ORDERED.

Dated: **November 29, 2023**

UNITED STATES DISTRICT JUDGE