**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAMETRIA NASH-PERRY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF BAKERSFIELD, OFFICER ALEJANDRO PATINO, and nominal defendant JASON OKAMOTO,<br><br>　　　　Defendants. | Case No.: 1:18-cv-1512 JLT CDB<br><br>ORDER ON SUPPLEMENTAL MOTIONS IN LIMINE<br><br>(Docs. 185, 186) |
| JASON OKAMOTO, individually and as successor-in-interest to CHRISTOPHER OKAMOTO, and Z.S., by and through her guardian ad litem, Brittney Saucedo,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF BAKERSFIELD and OFFICER ALEJANDRO PATINO,<br><br>　　　　Defendants. | |

Tametria Nash-Perry, Jason Okamoto, and minor Z.S. seek to hold Bakersfield Police Officer Alejandro Patino and the City of Bakersfield liable for the fatal shooting of Christopher Okamoto under federal and state law. (*See generally* Doc. 38.) Defendants contend all actions taken were

1

lawful and reasonable.  The Court held a jury trial, which ended with a mistrial after the jury could not reach a unanimous verdict.  A new trial is set for February 13, 2024.  Both parties filed additional motions in limine, which are now before the Court.[1]  (Docs. 185, 186.)

## I.     Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury."  *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).

Courts disfavor motions in limine seeking to exclude broad categories of evidence.  *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  The Court "is almost always better situated during the actual trial to assess the value and utility of evidence."  *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine.  *Sperberg,* 519 F.2d at 712.  Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings."  *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury.  *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000).  The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Jonasson*, 115 F. 3d at 440.

Moreover, the rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible.  In this event, the proponent of

---

[1] As the Court previously indicated, the rulings on the prior motions in limine remain in effect.  (*See* Docs. 170 at 2; *see also* Doc. 126.)

the evidence **SHALL** raise the issue outside the presence of the jury.  Finally, the rulings made here are binding on all parties and not merely to the moving party.

## II. Plaintiffs' Motion in Limine No. 2[2] (Doc. 186 at 6) – Expert Testimony

Plaintiffs seek to exclude the testimony of Curtis Cope, Defendants' retained police expert in police practices, asserting the expert disclosure did not satisfy the requirements of Rule 26 of the Federal Rules of Civil Procedure.  (Doc. 186 at 6.)

### A. Expert disclosures

A party must disclose the identity of any expert witness that may testify at trial.  Fed. R. Civ. P. 26(a)(2)(A).  The disclosure requirements differ for experts who are not retained and those who are retained by a party.  *See* Fed. R. Civ. P. 26(a)(2).  If an expert is *not* retained, the disclosing party must identify "the subject matter on which the witness is expected to present evidence" and provide "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).  On the other hand, if an expert witness is "retained or specially employed to provide expert testimony in the case"—or the identified expert is a party's employee whose duties "regularly involve giving expert testimony"—then the disclosure "must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B).  An expert's written report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*  In addition, the report must be prepared and signed by the expert.  *Id.*  These disclosures—and any accompanying reports—shall be made at the time ordered by the Court.  Fed. R. Civ. P. 26(a)(2)(D).

---

[2] Plaintiffs continued the numbering from their prior motion in limine.  For clarity, the Court retains the numbers identified by Plaintiffs.

A party's failure to comply with the rules regarding expert witnesses results exposes that party to sanctions under Federal Rule of Civil Procedure 37(c).  The Ninth Circuit gives "wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," which "gives teeth" to the disclosure requirements.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 529 F.3d 1101, 1106 (9th Cir. 2001) (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)).  This rule provides that a party who fails to provide required information in a disclosure or report "is not allowed to use that information or witness … at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

**B.     Analysis**

Plaintiffs assert that "Mr. Cope's testimony should be excluded … for the following reason: [] FRCP Rule 26 expert disclosure must include a description of the subject matter on which the expert will testify. The disclosure must also include a summary of the expected facts and opinions the expert will address in their testimony."  (Doc. 168 at 6.)  Requesting exclusion under Rule 37, "Plaintiffs complain that Defendants' disclosure of Mr. Cope suffers from one distinct deficiency: Defendants failed to provide an appropriate summary of the facts and opinions to which Mr. Cope is expected to present testimony as required by Rule 26(a)(2)(C)."  (*Id.* at 7, emphasis omitted.)  Plaintiffs assert the disclosure of Mr. Curtis as an expert stated:

> Curtis Cope
> 8531 Palerno Drive
> Huntington Beach, CA 92646-2626
> Mr. Cope's expert report is attached hereto as Exhibit A

(*Id.* at 7-8.)  Plaintiffs contend that "[w]ithout dispute," this disclosure "did not comply with FRCP 26(a)(2)(B)," under which Mr. Cope was required to provide a written report including "a complete statement of all opinions the witness will express and the bases for them." (*Id.* at 8, emphasis omitted.) In support of the requested exclusion, Plaintiffs attached "[a] true and correct copy of excerpts [of] Defendants (sic) Expert Disclosures … as Exhibit A" to the motion.  (*Id.* at 13; *see also* Diggs Decl., Exh. A. [Doc. 186-1 at 2-4].)

Defendants contend Plaintiff's motion in limine "is completely nonsensical and unclear."  (Doc. 187 at 2.)  Defendants note that although Mr. Cope is a retained expert, "[i]t appears Plaintiffs are

4

1   attempting to apply the requirements for designation of a non-retained expert." (*Id.*)  In addition,

2   Defendants argue that "on its face, Plaintiffs would lead this Court to believe that the Defendants did

3   not submit a full and complete report from its police procedures expert…." (*Id.*)  Defendants note

4   Plaintiffs provided only "*excerpts* [of the] Expert Disclosures," and "[n]oticeably absent from the

5   'excerpts' Plaintiffs' counsel submits to this Court is … Mr. Cope's report." (*Id.,* emphasis in original.)

6   However, Defendants assert the report was "a full and complete statement of all of his opinions, the

7   basis for his opinions, the materials he reviewed, his prior testimony, his prior publications, his

8   curriculum vitae, his rate charged"; and it complied with "any and all other requirements" of Rule 26.

9   (*Id.*; *see also* Marderosian Decl. Exh. A [Doc. 187 at 7-36].)  Defendants also argue it is "ludicrous that

10  Plaintiffs' counsel would now… contend for the first time that Defendants failed to properly disclose its

11  expert opinions." (*Id.* at 3.)  Defendants conclude the motion to preclude Mr. Cope from testifying at

12  the trial "has absolutely no merit" and should be denied. (*Id.*)

13         Importantly, Mr. Cope was identified as a "retained expert" in Defendants' expert disclosure.

14  (Doc. 181-1 at 3, Diggs Decl. Exh. A.)  Due to his status as a retained expert, the requirements of Rule

15  26(a)(2)(C) are inapplicable, and Plaintiffs' reliance upon these standards was misplaced.  Rather, the

16  disclosure of Mr. Cope was governed by Rule 26(a)(2)(B), which explicitly applies to witnesses

17  "*retained* or specially employed to provide expert testimony in the case…" Fed. R. Civ. P. 26(a)(2)(B)

18  (emphasis added).

19         Plaintiffs suggest the expert disclosure of Mr. Cope was deficient under Rule 2(a)(2)(B) because

20  Defendants did not include "a complete statement of all opinions the witness will express and the bases

21  for them." (Doc. 186 at 8, emphasis omitted.)  However, Plaintiffs fail to acknowledge that Mr. Cope's

22  expert report was incorporated in the disclosure as "Exhibit A." (*See* Doc. 186 at 8; Doc. 186-1 at 3.)

23  Defendants maintain the expert report was attached and properly produced on April 13, 2021.[3]  (Doc.

24  187 at 6, Marderosian Decl. ¶ 2.)  In the written report, Mr. Cope identified the "research materials and

25  documents" he reviewed and the testimony he expected to give "[b]ased upon" his review of the "listed

---

[3] Indeed, the disclosure provided by Plaintiffs states that "Mr. Cope's expert report is attached [to the disclosure] as Exhibit A," though Plaintiffs did not include the report with their exhibits. (*See* Doc. 181-1 at 3.)  Plaintiffs did not argue this report was not produced as indicated in the disclosure.

5

1  items and research materials." (*See* Doc. 187 at 12, 15; *see also id.* at 12-23.)  Because Mr. Cope
2  provided a report identifying his opinions and the bases for his expected testimony, the discovery
3  record contradicts Plaintiffs' assertion that Defendants failed to comply with Rule 26(a)(2)(B).
4  Plaintiffs are not entitled to the relief requested under Rule 37. Thus, the motion to exclude the
5  testimony of Mr. Cope is **DENIED**.

6  **III.   Plaintiffs' Motion in Limine No. 3 (Doc. 186 at 8) – 911 Call**

7  Plaintiffs request the Court "exclude the 911 call recording made by Decedent's next door
8  neighbor Mr. Edward White … on August 19, 2018, as it constitutes hearsay." (Doc. 186 at 8.)  In the
9  call, Mr. White stated that "a couple is fighting," and "it sounds like he's choking her." (*Id.* at 9.)

10  **A.   Hearsay**

11  Hearsay statements are those "(1) the declarant does not make while testifying at the current
12  trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the
13  statement." Fed. R. Evid. 801(c). Such statements are inadmissible unless a statement falls within a
14  recognized exception to the hearsay rule. *See, e.g.,* Fed. R. Evid. 803. Once a hearsay objection is
15  raised, the party seeking to introduce the evidence has the burden to show a hearsay exception or
16  exemption applies. *See Cal. Found. for Indep. Living Ctrs. v. County of Sacramento*, 142 F.Supp.3d
17  1035, 1044 (E.D. Cal. 2015); *see also Wright and Miller,* Introduction to Rule 803 and General
18  Principles, 30B *Fed. Prac. & Proc. Evid.* § 6803 (2022 ed.) ("[t]he proponent of the statement …
19  bears the burden of proving each element of a given exception or exclusion").

20  **B.   Analysis**

21  Plaintiffs argue, "Mr. White's statements contained on the 911 recordings are out of court
22  statements that would only be offered by the Defendants for the truth of the matter asserted. As such, it
23  should be excluded." (Doc. 186 at 9.) Plaintiffs note that Mr. White testified, during his deposition,
24  about what he heard:

25  > Q: "Okay. But at some point, did you feel that you were hearing the girlfriend being choked?"
26  
27  > A: "No. Now, when I said that, I didn't see it and that sound that I heard was after I heard them – so they were --- he was trying to leave with the – it seemed like he grabbed the baby and he was leaving, she went outside
28  > to stop him, and then when they went – I don't know. I didn't see anything..."

6

(Doc. 186 at 9 [emphasis omitted], quoting White Depo. 21:16-23 [Doc. 186-1 at 9].) Plaintiffs also observe that Ms. Saucedo, Decedent's girlfriend, "testified that the decedent never choked her." (*Id.*) Thus, Plaintiffs assert the "911 call should be excluded" and "any witness should be prohibited from referencing the content of the 911 call." (*Id.* at 10.)

Defendants oppose the motion, arguing the 911 call is not hearsay because "[t]he point of the 911 call is not to establish that Mr. Okamoto was choking Ms. Saucedo." (Doc. 187 at 3; *see also id.* at 3-4.) Defendants note, "statements not presented for truth of [the] matter but solely to prove statements were made" are not hearsay. (*Id.* at 4, citing *Abrams v. Department of Pub. Safety*, 764 F.3d 244, 252 (2nd Cir. 2014).) In addition, Defendants observe the Ninth Circuit determined that "testimony about personally held belief was nonhearsay." (*Id.*, citing *Ostad v. Oregon Health Sciences Univ.*, 327 F3d 876, 885-886 (9th Cir. 2003).) Defendants assert the call should be admitted to show that Mr. White heard noises that prompted the 911 call, relayed his concerns, and dispatch then "reported to Officer Patino that he was responding to a situation of a male choking or strangling a female." (*Id.* at 4.) Thus, Defendants conclude that because it is not being admitted for the truth of the matter asserted—but rather to show a call was made and Patino believed he was responding to a domestic violence call—the 911 call should not be deemed hearsay. (*Id.*) Even if the Court finds the call was hearsay, Defendants contend the "present sense impression" exception applies to the statements made by Mr. White. (*Id.*) Defendants conclude, "There is absolutely no basis to exclude Mr. White's call to 911 which prompted the police to be dispatched on a domestic violence dispute." (*Id.*)

### 1. Non-hearsay

Significantly, at the first trial the 911 call was not used as evidence to establish that Decedent did, in fact, choke his girlfriend. Rather, Defendants presented evidence that explained the dispatched information to the responding officers, including Patino, and the officers' beliefs related to the situation inside the apartment. This supports Defendants' assertion that the evidence is not intended to establish the truth of the matter asserted and is not hearsay.

### 2. Present sense impression

The "present sense impression" exception applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).

7

To qualify for this exception, "the declarant must… have personal knowledge of what she describes." *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995). Mr. White had personal knowledge of the sounds he heard, even if he could not see the events unfolding. Because Mr. White called 911 and described the sounds he heard at the time, the recorded statements were made "immediately" as he perceived it. Thus, the 911 calls may be admitted under the "present sense impression" exception. *See United States v. Spencer*, 2019 WL 2367096, at *6 (D. Minn. June 5, 2019) (finding the exception applied where a 911 caller described "events as they happened"); *see also Payne v. City of Los Angeles*, 2023 WL 6850045, at *7 (C.D. Cal. Aug. 30, 2023) (observing that "911 calls are relevant to the state of mind of the officers when they were called to and responded to the incident" and denying the motion in limine to exclude the 911 calls as subject to hearsay exceptions). Consequently, even if the Court agreed the 911 call was intended to prove the matter asserted—and thus, hearsay—Defendants carry the burden to show an exception to the hearsay rule applies. Plaintiffs' motion in limine to exclude the 911 call is **DENIED**.

### IV.     Plaintiffs' Motion in Limine No. 4 (Doc. 186 at 9) – Testimony of Mr. White

Plaintiffs seek to "exclude speculative testimony by Mr. White." (Doc. 186 at 9, emphasis omitted.) Plaintiffs contend any testimony by Mr. White "referencing that the decedent smelled like alcohol is mere speculation" and should be excluded. (*Id.* at 10.)

#### A.     Lay witness testimony

Pursuant to Rule 701 of the Federal Rules of Civil Procedure, a lay witness may offer "testimony in the form of an opinion" if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Civ.P. 701. The phrase "rationally based on" under Rule 701 "means the opinion is one that a normal person would form on the basis of the observed fact." *Cal. Found for Indep. Living Centers*, 142 F.Supp.3d at 1045. Thus, to be admissible, lay opinion must be based on "facts perceived from [the witness's] own senses." *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006); s*ee also United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (noting that "Rule 701 does not interdict all inference drawing by lay witnesses" but such "inferences must be tethered to perception").

8

**B.     Analysis**

Plaintiffs request the Court "prevent the Defendants from introducing certain improper and speculative testimony at trial…." (Doc. 186 at 9.)  "Specifically, Plaintiffs seek to prevent the Defendants from making statements or asking questions about misconduct allegedly perceived by witness Edward White." (*Id.*)  As an example, Plaintiffs observe that when Mr. White was deposed, he was asked:

> Q:  Okay. At some point you said that you smelled alcohol on Mr. Okamoto's person; is that also accurate?
> A:  Yes.
> Q:  But you didn't personally see Mr. Okamoto drinking, correct?
> A:  No.
> Q:  So you have no idea whether Mr. Okamoto had just had a shot of some sort of spirit or if he had been drinking all day; is that accurate?
> A:  Correct. No idea.

(*Id.* at 9-10, quoting White Depo. 40:11-21 [Doc. 181-6 at 16].)  According to Plaintiffs, "Mr. White's belief that the decedent smelled like alcohol… is neither rationally based nor helpful to the jury." (*Id.* at 10.)  Plaintiffs argue that any such testimony "would only be introduced for the sole purpose of presenting [Decedent] to the jury as a violent person." (*Id.*)  Plaintiffs conclude, "the mere mention of this alleged misconduct would be substantially more prejudicial than probative." (*Id.*)

Defendants oppose the motion, arguing that the statements identified were observations made by Mr. White and not subject to exclusion. (Doc. 187 at 4-5.)  Defendants note: "At trial, Mr. White testified that he went to tell Mr. Okamoto to quiet down and before he could go over there, they had passed each other and he could smell the alcohol throughout the hallway. Mr. White thought Mr. Okamoto was intoxicated and did not want to deal with that if he was drunk." (*Id.*, citing White Testimony, 11:5-12:2, 12:18-25 [Doc. 187 at 50-51].)  Defendants also observe this testimony was corroborated by the testimony of Ms. Saucedo, who "told police Mr. Okamoto was drunk." (*Id.*, citing Saucedo Testimony 39:14-40:3 [Doc. 187 at 55].)  Finally, Defendants assert the Court previously "ruled on the admissibility of Mr. Okamoto's intoxication." (*Id.*)

Notably, the questions Plaintiffs cite as an example of questions that should be precluded were posed by *Plaintiffs'* counsel. (*See* Doc. 181-1 at 15 [indicating Mr. Bryant was questioning Mr. White at that time].)  In addition, the challenged deposition testimony from Mr. White does not include

speculation. A lay witness may testify as to things he perceives with his "own senses," which include smell. *See Durham*, 464 F.3d at 982. Mr. White testified that he smelled alcohol and may offer a lay opinion that Decedent was drunk based upon his personal observations of Decedent. *See id.; see also United States v. Mastberg*, 503 F.2d 465, 470 (9th Cir. 1974) ("a lay witness may state his opinion that a person appeared… intoxicated"). Toward that end, a lay witness may offer an "an opinion on intoxication formed from… signs such as slurred speech, staggering, *smelling of alcohol* on the breath, etc." *Beckham v. Stiles* 2009 WL 10713312, at *3 (E.D. Wis. Apr. 27, 2009) (emphasis added). Accordingly, Defendant's motion to preclude the testimony of Mr. White as speculative is **DENIED**.[4]

**V.    Plaintiffs' Motion in Limine No. 4 (Doc. 186 at 10) – Mentioning Alcohol**

Plaintiffs seek "[t]o preclude Defendants from any mention of the following words: alcohol, drunk, drinking, intoxicated, beer, and being under the influence of any substance." (Doc. 186 at 10, emphasis omitted.) Plaintiffs contend the terms should be precluded because "this information was not known to Defendants at the time of the incident." (*Id.*)

As Defendants note, this Court previously addressed the admissibility of evidence related to intoxication. (Doc. 187 at 5, citing Doc. 126 at 5.) Plaintiffs moved to exclude all after-acquired information from evidence in Motion in Limine No. 1. (*See* Doc. 126 at 4.) Addressing the motion, Court observed there was "clearly a dispute over whether there was an argument taking place inside the apartment when the officers arrived." (*Id.* at 8.) Due to the dispute, the Court determined that "if Plaintiffs open the door by presenting evidence that Decedent was asleep or acting in a rational manner when the police arrived, the toxicology results may be used to corroborate the officers' version of the events." (*Id.*, citing *Turner v. County of Kern*, 2014 WL 560834 at *3 (E.D. Cal. Feb. 13, 2014) *Sanchez v. Jiles*, 2012 WL 13005996 at *23 (C.D. Cal. June 14, 2012).) The Court reserved ruling upon the admissibility of toxicology evidence "unless and until Plaintiffs present evidence related to the decedent's conduct" (*id.*), and this ruling remains in effect. Should Plaintiff's open the door—such as by presenting any evidence regarding the activities of Decedent during the day or that he acted in a

---

[4] The Court declines to assume counsel will pose improper questions that invite speculation. In the event questions posed require a speculative response, such an objection may properly be raised at that time. However, the testimony that Mr. White smelled alcohol on Decedent is simply not speculation and may be admitted.

rational manner when the police came to the door—Defendants may present evidence to corroborate the officer's testimony, which includes evidence that Decedent was drinking alcohol and Decedent's girlfriend believed he was drunk. For this reason, the motion to preclude all witnesses from mentioning the words "alcohol, drunk, drinking, intoxicated, beer, and being under the influence of any substance" is **DENIED**.

## VI. Plaintiffs' Motion in Limine No. 6 (Doc. 186 at 11) – Insinuations and Disingenuous Comments

Plaintiffs request the Court "preclude counsel or witnesses from any insinuations [and] being disingenuous because of the decedent or witness' race." (Doc. 186 at 11, emphasis omitted.) Plaintiffs note that in the opening statement of the first trial, Defendants' counsel stated: "Tim Brown is African American. So is Christopher Okamoto. And so they become friends and—." (*Id.* at 12, quoting Doc. 181-1 at 22, Trial Transcript 6:5-6.) Plaintiffs note they objected to this statement, and the Court sustained the objection. (*Id.*) In response, Defendants assert: "counsel is not disingenuous and has no intention of making any insinuations based on the decedent or any witness's race." (Doc. 187 at 5.)

Previously, the Court granted a motion to exclude evidence that the underlying incident "was motivated by racial animus," because any evidence on racial animus was irrelevant to the claims in issue. (Doc. 126 at 12.) Consequently, the races of Decedent, parties or witnesses are irrelevant. Accordingly, Plaintiffs' motion to preclude comments on the race of any person connected with this case is **GRANTED**.

## VII. Defendants' Motion in Limine A (Doc. 185 at 10) – Evidence of Tactical Plan

Defendants move "to exclude any evidence or argument that Officer Patino and Officer Celedon did not have a tactical plan prior to approaching the subject apartment" pursuant to Rules 401 at 403 of the Federal Rules of Evidence. (Doc. 185 at 10.)

Defendants observe, "During the course of the first trial in this matter, Plaintiffs repeatedly inquired about whether Officer Patino and Officer Celedon had formulated a tactical plan prior to Officer Patino knocking on the subject door." (Doc. 185 at 10.) Defendants contend:

> [T]here was no evidence that the purported lack of or even inadequate tactical plan caused or contributed to the subject incident. Plaintiffs' use of force expert offers no opinion that the conduct of the officers prior to

> reaching the landing was improper or that the purported lack of a tactical plan was improper or inadequate.

(*Id.*) Defendants argue that evidence related to a tactical plan "would be confusing and a waste of time." (*Id.*) In support of this assertion, Defendants observe the jury in the first trial submitted a question "as to when they consider the incident – *i.e.*, the time the officers arrived versus when Officer Patino reached the landing." (*Id.*) Defendants note that in response, the jury was instructed "to consider the incident as of when Officer Patino reached the landing." (*Id* at 11.) According to Defendants, "[t]his was because there is no causal connection between the issue of the tactical plan and injuries that are being alleged in this lawsuit." (*Id.*) Moreover, Defendants assert that Plaintiffs have no expert who can testify as to the propriety of the Defendants conduct while approaching the apartment door. (*Id.* at 10.) Thus, they conclude any evidence related to a tactical plan, or lack thereof, should be excluded. (*Id.* at 11.)

Plaintiffs oppose the request, asserting they "should not be precluded from presenting evidence or argument pertaining to whether Officers Patino and Celedon discussed the formation of a tactical plan upon reaching the landing, and if so what the plan was, and if not, why didn't they formulate such a plan." (Doc. 188 at 5.) Plaintiffs acknowledge the Court ruled "it was not relevant whether Officers Patino and Celedon had discussed a tactical plan prior to the approaching the apartment." (*Id.*) However, Plaintiffs note the Court made "it clear that anything that occurred once the officers had reached the landing would be relevant to Plaintiffs' claims against Defendant." (*Id.*) Plaintiffs believe "whether or not the officers formulated and implemented a tactical plan upon reaching the landing is important, and may have prevented the loss of Mr. Okamoto's life if a proper plan was implemented." (*Id.* at 6.) Plaintiffs assert such evidence is not required to come from an expert, and they may "present evidence through Officers Celedon and Patino related to their training and implementation of tactical plans during situations similar to the one that occurred on the night of the incident." (*Id.*)

Significantly, the need to develop a tactical plan or what constitutes an appropriate tactical plan comes within the purview of expert testimony. As Defendants observe, Plaintiffs have designated no expert to discuss the tactics officers use when approaching service calls. (Doc. 192 at 82-91) This issue was raised and discussed at length at the first trial, and there was no indication in his Rule 26

12

1 disclosure nor in his deposition, that Plaintiffs' expert intended to offer an opinion as to any tactical
2 plan the officers may or may not have developed or whether doing so was required in this instance. *Id*.
3 Thus, the motion is **GRANTED**

### VIII.  **Defendants' Motions in Limine B, C, and D (Doc. 185 at 11-13) – Patino's Interview**

After the underlying incident, witnesses and involved parties—including Patino—were interviewed.  Defendants seek to exclude evidence relating to Patino's interview, including that the interview took place four days after the incident, Patino was permitted to review evidence prior to the interview, and that he was represented at the interview.  (Doc. 186 at 11-13.)  Plaintiffs oppose each of the motions.  (Doc. 188 at 6-8.)

#### A.    Representation at the interview (Doc. 185 at 11)

Defendants request that Plaintiffs be precluded "from introducing evidence or making any argument regarding the presence of an attorney or union representative during the interview with Officer Patino following the subject incident." (Doc. 185 at 11.)  Defendants contend evidence related to representation at the interview "is completely irrelevant," to addressing "whether the use of force was excessive." (*Id.*)  In addition, Defendants assert the "prejudicial value far outweighs any probative value, particularly because the Plaintiffs have no evidence that having an attorney or union representative present is unusual or improper." (*Id.*)  As a result, Defendants argue the "evidence is irrelevant and should be excluded under Fed. R. Evid. 401, 402, and 403." (*Id.*)

Plaintiffs argue that Patino was the only officer who gave a statement "in the presence of an attorney." (Doc. 188 at 7.)  Plaintiffs contend they have "the right to present evidence which calls in to question why Officer Patino[] …[had] counsel prior to giving his statement to investigators, rather than providing a statement on the very night of the incident." (*Id.* at 8-9.)

Notably, the Court previously "sustained an objection to Plaintiffs (sic) counsel's opening statement to the jury that Officer Patino had a lawyer present when he was interviewed." (Doc. 185 at 11, citing Trial Transcript 18:17-19:2 [Doc. 185 at 22-23].)  Patino's representation—or the lack of representation for other officers—when interviewed is not relevant to the claims in issue.  Moreover, as Defendants assert, Plaintiffs did not identify any expert to provide testimony regarding interview practices and procedures, such as whether representation is not standard for all officers, or standard for

13

1 the officer who fired a weapon compared to officers who responded to the incident scene but did not
2 shoot. The jury would be required to speculate as to whether representation was a standard practice,
3 and the relevance of the evidence. Consequently, even if the Court agreed the evidence had some
4 limited relevance, the potential for prejudice and wasting jurors' time outweighs any probative value.
5 Defendants' motion to exclude evidence related to Patino's representation at the interview, by either
6 an attorney or union representative, is **GRANTED**.

### B. Review of evidence (Doc. 185 at 12)

Defendants note that during the first trial, "Plaintiffs elicited testimony from Officer Patino that he was allowed to listen to 'evidence' prior to his interview." (Doc. 185 at 12.) Defendants now move "to preclude the Plaintiffs from introducing evidence or making any argument that Officer Patino was allowed to listen to the radio transmissions between the officers and the communication center prior to his interview." (*Id*.) Defendants note this includes communications in which Patino "said he heard 'sounds of a struggle.'" (*Id.*)

According to Defendants, the possible suggestion from testimony regarding the review of evidence is that "Patino somehow changed his statement based on what he heard." (Doc. 185 at 12.) However, Defendants contend that "Plaintiffs do not offer any testimony or evidence that Officer Patino's review of his own radio transmissions or statements prior to giving his interview was, in any way, improper or that his testimony was inconsistent with what he heard…. Plaintiffs' counsel simply wants the jury to infer or speculate that this is somehow improper or nefarious." (*Id.*) For example, Defendants note there was no evidence to show the jury that a review of evidence prior to an interview "would be an improper or unusual thing for the Bakersfield Police Investigators to allow." (*Id.*) Defendants contend that to rebut such a suggestion, "counsel would necessarily have to go through, for the jury, what Officer Patino heard and even play the transmissions so that the jury could determine that this is nothing more than a red herring." (*Id.*) Defendants conclude such testimony should be precluded as "irrelevant and … a waste of time." (*Id.*)

Plaintiffs assert that only Patino was granted "an opportunity to review evidence, including statements made by other officers and third-party witnesses following the incident." (Doc. 188 at 7.) Plaintiffs argue such testimony related to Patino's review of evidence before his interview "may call

14

into question whether Officer Patino was being truthful when he made his statements, whether having an opportunity to review the evidence with counsel prior to providing statement could have impacted the truthfulness of his statements." (*Id.*) Plaintiffs also contend, "Defendant[s] … presented no case law supporting their position that such evidence should be excluded on the basis of it some how [sic] being prejudicial, and this evidence is most certainly relevant for the jury in assisting them in making a determination related to whether or not they believe any portion of Officer[] Patino's testimony." (*Id.*)

There is nothing that supports a conclusion that Patino's evidence review is relevant to the claims of wrongful death, negligence, or excessive force. Plaintiffs did not present any evidence that the review was improper or a violation of typical law enforcement procedures and have not identified an expert regarding such procedures. Even if Plaintiffs *could* demonstrate a review of evidence was contrary to policy, there is nothing to suggest such testimony may be used even for impeachment purposes. For example, Plaintiffs do not argue Patino made inconsistent statements before and after reviewing the evidence. Consequently, such evidence is irrelevant, poses a significant potential for jury confusion and constitutes an undue waste of time. The motion to exclude testimony—and related arguments—that Patino reviewed evidence prior to his interview is **GRANTED**.

### C. Timing of Interview (Doc. 185 at 12)

Defendants observe, "During the course of the original trial, Plaintiffs elicited testimony that Officer Patino was not interviewed until four days after the incident." (Doc. 185 at 13.) Defendants contend such testimony "should be excluded under both Fed. R. Evid. 401 and 403." (*Id.*) Defendants maintain the evidence "is entirely irrelevant to the question of whether the use of deadly force was reasonable and appropriate and will take up an unnecessary amount of court and jury time having to respond to it." (*Id.*)

Plaintiffs note that "[d]uring the trial evidence was presented that all of the other officers who were present on the scene either during or shortly after the shooting occurred were all interviewed within several hours following the incident." (Doc. 188 at 7.) Plaintiffs contend the time granted to Patino was "unusual amount of time to prepare for an interview." (*Id.*) Plaintiffs maintain they have "the right to present evidence which calls into question why Officer Patino's was afforded this type of time … rather than providing a statement on the very night of the incident." (*Id.* at 7-8.)

As discussed above, however, Plaintiff did not identify any evidence—including an expert on such procedures—to testify regarding interview procedures, or the timing of such interviews. First, there is no indication that Patino had any control over when his interview occurred. Though the investigators interviewed other officers within a short time of the shooting, the Court has been provided no indication as to why these investigators chose to delay Patino's interview for four days. There is no support for the inference that it is unusual or improper for this delay to have occurred. Instead, Plaintiffs seek permission to imply the procedure was unusual by pointing to the different timing for other responding officers compared to Patino, who was the only officer to fire his weapon. Regardless, the timing of the interview is not relevant to Plaintiffs' claims against Patino and the City, and there is nothing to suggest this evidence may be used for impeachment purposes. Accordingly, the motion in limine to preclude evidence and argument "that Officer Patino was not interviewed for four days following the incident" is **GRANTED**.

## IX. Defendants' Motion in Limine E (Doc. 185 at 13) – Testimony of Mr. White and Ms. Contreras beyond 911 Call

Defendants seek to preclude Edward White and Melissa Contreras from expressing "motives or beliefs beyond those articulated in the 911 call." (Doc. 185 at 13.) For example, Defendants note: "At the time of trial, Mr. White testified that he did not believe anyone was in 'immediate harm' and he simply wanted someone to 'diffuse the situation'." (*Id.*) Defendants observe this information was not conveyed to the 911 operator or responding officers. (*Id.*) Rather, Mr. White indicated in the 911 call that "there was a couple fighting and that he believed the man was choking the female." (*Id.*)

Plaintiffs note that "Mr. White and Ms. Contreras were the witnesses of Defendants," and argue the exclusion of their testimony is not warranted because Defendants "do not agree with the testimony." (Doc. 188 at 8.) Plaintiffs contend: "Mr. White testified under oath he did not believe decedent was choking Ms. Saucedo. This testimony should come in, as it did during trial. Defendants can bring up the inconsistencies at trial, if any." (*Id.*) Plaintiffs argue, "More importantly, Defendant Patino never heard the 911 so this is a moot issue. Alternatively, if the Court grants this motion *in*

*limine*, the 911 call should be excluded as well."[5] (*Id.*, emphasis omitted.)

In reply, Defendants reiterate that Mr. White did not communicate that he "just wanted his neighbor to calm down or be quiet" to the 911 officer. (Doc. 191 at 3-4, internal quotation marks omitted.) Defendants contend, "the bottom line" is that the motivation of Mr. White in calling 911 was irrelevant. (*Id.* at 4.) According to Defendants, Mr. White and Ms. Contreras "should not be permitted to testify that they only called 911 because they wanted their neighbors to quiet down." (*Id.*) Rather, Defendants conclude "the inquiry should stop" at what was reported by Mr. White when he called 911. (*Id.*)

Mr. White and Ms. Contreras were in the adjacent apartment and reported they could hear sounds from the neighboring apartment. The sounds heard, and the beliefs formed as a result of these sounds, are admissible lay witness testimony. *See Durham*, 464 F.3d at 982; *Santos*, 201 F.3d at 963 (lay witnesses may make inferences, "tethered to perception, to what the witness saw or *heard*") (emphasis added). Mr. White and Ms. Contreras may express their beliefs as to what sounds were heard from the apartment, including their beliefs as to whether there were sounds of choking. Such evidence could either support or undermine the testimony of Patino, should he testify as to sounds he heard from the apartment when he arrived. To the extent Mr. White and Ms. Contreras could hear the events unfolding after police arrived, such testimony—such as whether Patino announced the presence of the police at the door and how Okamoto responded— also would require the witnesses to testify as to their beliefs beyond the scope of the 911 call, yet this evidence is clearly relevant. On the other hand, Mr. White did not express his *motivation* in calling 911 to the answering operator. Neither the 911 operator nor the responding officers had knowledge of the motivation behind the call. Thus, the Court is unable to find that the motive for the 911 call is relevant.

The motion in limine is granted in part and denied in part. Mr. White and Ms. Contreras may testify as to their beliefs beyond the scope of the 911 call, and the motion to exclude such beliefs is **DENIED**. However, Mr. White and Ms. Contreras shall not testify as to the motive in calling 911, and the motion to exclude such testimony is **GRANTED**.

---

[5] As discussed above, the Court declines to exclude the 911 call. Toward that end, Plaintiffs' objection based on its exclusion is overruled.

## X. Defendants' Motion in Limine F (Doc. 185 at 14) – Undisclosed Expert(s)

Defendants note Plaintiffs previously filed a motion to bring new expert witnesses, including a request to designate a trajectory expert. (Doc. 185 at 14.) Defendants argue that "Plaintiffs should not be permitted to offer expert opinions which were not properly disclosed pursuant to the Scheduling Order." (*Id.*) Recently, the Court denied Plaintiffs' motion to amend the pretrial order and denied Plaintiffs' motion to designate a trajectory expert. (Doc. 194.) Accordingly, Defendants' motion in limine to exclude such undisclosed experts is **GRANTED**.[6] Counsel SHALL ensure that their experts understand the Court's ruling and their obligations to confine their testimony to the opinions offered in their Rule 26 reports and those offered at their depositions.

## XI. Defendants' Motion in Limine G (Doc. 185 at 14-17) – Additional Exhibits

Defendants note that Plaintiffs also moved to identify several additional exhibits for the second trial, including:

- Officer Patino's Training Records
- Bakersfield Police Department Policies and Procedures
- Photos from Brittney Saucedo Phone with Christopher Okamoto
- Demonstrative Prop of a Door[7]
- Okamoto and Nash-Perry Family Photos
- Funeral Costs
- Video Clips from Christopher Okamoto's Funeral

(Doc. 185 at 14-15.) Defendant argues the exhibits should be excluded.

The Court has already addressed the above proposed additional exhibits in its order denying Plaintiffs' motion to amend the pretrial order. (Doc. 194 at 12-16.) The motion is **MOOT**.

## XII. Defendants' Motion in Limine H (Doc. 185 at 18) – Lack of Body Camera

Defendants request Plaintiffs be precluded "from suggesting or otherwise arguing that Officer Patino should have had a body camera or had a body camera but did not activate it." (Doc. 185 at 18.) Defendants note: "During the course of trial, Plaintiffs' counsel asked a number of questions involving body worn cameras and whether officers had body worn cameras. [Citation.] However, the Bakersfield Police Department did not provide all officers assigned to patrol body cams." (*Id.*, citations omitted.)

---

[6] The parties are referred to the Pretrial Order, which identifies the governing standards for calling undisclosed witnesses. (*See* Doc. 99 at 14.)

[7] The Court reiterates here its ruling related to the door. (*See* Doc. 194 at 15 n. 4.)

Defendants contend any evidence and argument related to body cameras is "entirely irrelevant and should be precluded under Fed. R. Evid. 401 and 403." (*Id.*)

According to Plaintiffs, the testimony related to body cameras goes to "Patino's credibility as a witness" and "is impeachment testimony." (Doc. 188 at 14.) Plaintiffs contend, "Patino testified at trial that no one in BPD wore body cameras at the time of the incident. However, his testimony was impeached." (*Id.*) Because "Patino's credibility is of paramount importance in this case," Plaintiffs contend the evidence related body camera use should be permitted. (*Id.*)

The record of the first trial does not support the assertion that Patino's testimony concerning body cameras was impeached. Plaintiffs' counsel asked Patino if he had a body camera on the day of the incident, to which Patino responded no, and that he did not have a body camera in 2018. (Doc. 191 at 11, Transcript 167:3-7.) During the re-cross examination, Patino was asked: "In August of 2018, did the Bakersfield patrol unit have body cams at that time?" (*Id.* at 13, Transcript 179:21-25.) Patino responded, "No." (*Id.*) Officer Esguerra, who was assigned to the Internal Affairs division of the Bakersfield Police Department, testified "there were some officers wearing body worn cameras at that time" and the department was "just in the process of either testing some different models as well as issuing some different models." (Doc. 185 at 54-55, Transcript 4:22- 5:4.) Counsel then asked Esguerra, "So are you agreeing with me that if somebody said no police officers in the Bakersfield Police Department were wearing body worn cameras in 2018, that would be a false statement; correct?" (*Id.* at 55, Transcript 5:5-10.) Esguerra again responded that "some police officers were wearing body worn cameras in 2018." (*Id.*) Notably, there is no evidence that Patino testified that "no police officers" had body cameras. Rather, he was asked whether those in the patrol unit had body cameras. Patino offered testimony limited to the "patrol unit," while Esguerra testified that "some officers" had the cameras. There was no evidence that "some" of the officers of which Esguerra spoke were within the patrol unit.

Moreover, as Defendants assert, any evidence related to body cameras is not relevant to the issues to be resolved by the jury. For example, there is no claim Patino or Celedon had a body camera or refused to use one that was provided or that either had a duty to use a body camera. Given the lack of relevance, the motion to exclude evidence related to the lack of body camera is **GRANTED**.

### XIII. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiffs' Motion in Limine No. 2 (Doc. 186 at 6) is **DENIED**.
2. Plaintiffs' Motion in Limine No. 3 (Doc. 186 at 8) is **DENIED**.
3. Plaintiffs' Motion in Limine No. 4 (Doc. 186 at 9) is **DENIED**.
4. Plaintiffs' Motion in Limine No. 4 (Doc. 186 at 10) is **DENIED**.
5. Plaintiffs' Motion in Limine No. 6 (Doc. 186 at 11) is **GRANTED**.
6. Defendants' Motion in Limine A (Doc. 185 at 10) is **GRANTED**.
7. Defendants' Motions in Limine B (Doc. 185 at 11) is **GRANTED**.
8. Defendants' Motions in Limine C (Doc. 185 at 12) is **GRANTED**.
9. Defendants' Motions in Limine D (Doc. 185 at 12) is **GRANTED**.
10. Defendants' Motion in Limine E (Doc. 185 at 13) is **GRANTED IN PART**, as stated above.
11. Defendants' Motion in Limine F (Doc. 185 at 14) is **GRANTED**.
12. Defendants' Motion in Limine G (Doc. 185 at 14-17) is **MOOT**.
13. Defendants' Motion in Limine H (Doc. 185 at 15) is **GRANTED**.

IT IS SO ORDERED.

Dated:   **January 10, 2024**　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE